Graves' Adm'r *v.* Poage.

———◄•●•►———

GRAVES' ADMINISTRATOR, Appellant, *vs.* POAGE, Respondent.

A. and B., both citizens of Missouri, were digging gold on shares and living in a tent together, in a wild, unsettled region of California.  A. died, leaving a sum of gold and some wearing apparel.  After his death, B. sold the wearing apparel, caused the gold to be weighed, and a memorandum of it to be made by A.'s acquaintances, took out of it enough to pay the expenses of his sickness and interment, and started to bring the remainder home to A.'s family in Missouri.  On his way, his trunk was broken open, and the gold stolen.  *Held,*

1. These acts, under the circumstances, do not render B. liable to A.'s administrator in Missouri as an executor *de son tort,* being mere acts of kindness and charity.

2. In undertaking to bring the gold home, B. only incurred the liability of a bailee without hire, and was only responsible for gross negligence.

## *Appeal from Monroe Circuit Court.*

*Howell,* for appellant.  The court erred in refusing the first and second instructions asked by plaintiff.  It is insisted that this is the true rule, and that there is nothing in this case to prevent its application to the respondent.  It was the duty of the respondent to deliver the property of the deceased to the proper tribunal or officer nearest where it was found in California, to be held and transmitted to the domiciliary representative according to law.

*Glover & Campbell,* for respondent.  Poage not only did right, but it was his duty to bring the gold of the deceased to Missouri.  If a person dies, leaving personal property in a country or state different from the one in which he resides, it does not follow that administration must be had upon such personal property in the state or country in which it is at the

death of the owner. As to ships and cargoes, see Story's Con. of Laws, §520. As to the act of taking possession of goods of deceased persons, see 2 Dev. & Batt. 2. The question of due diligence in the transportation of the gold was fairly before the jury, and the loss of it under the circumstances was a good defence. Wright's Rep. 411. Story on Bail. §27, §174, §175. 11 Wend. 25. 2 Hawk's Rep. (N. C.) 6. 6 Shep. 174.

GAMBLE, Judge, delivered the opinion of the court.

Graves, the intestate, and Poage, the defendant, together with the brother of Poage, were at work in California, digging for gold in a common adventure, and sharing their gains. They lived together in a tent, in a wild, unsettled part of that country. They were all citizens of Monroe county, in this state, and had not changed their domicil. Graves became sick, and received all the attention which the condition of the Poages admitted, and when he died, he was interred by them. A physician had been procured to visit him. Upon his death, he left in the tent occupied by himself and his associates, gold to the amount or value of thirteen or fourteen hundred dollars, some wearing apparel and other small articles. The two Poages, upon the death of Graves, determined to return to Missouri, and the defendant sold the wearing apparel and other personalty of Graves, which was supposed not to be worth the trouble and expense of transportation, and taking the gold of Graves to a place called Georgetown, he caused it to be weighed and the value ascertained, and a memorandum thereof to be made by persons who were acquaintances of Graves and residents of the same county in this state. Upon a consultation with those acquaintances of Graves, it was thought best that the defendant should bring the gold home to the family of Graves in Missouri, and accordingly, after paying the expenses of his sickness and interment, the defendant started home with the gold put into a hand trunk, in which was carried the

gold belonging to himself and his brother, and that belonging to some other persons who traveled in the same company, as well as gold he was bringing home to other persons here. The evidence shows the care taken of the trunk and its contents, and the manner in which the different parcels were distinguished from each other by being in different bags. At New Orleans, the state room on the steamboat on which the defendant and his companions had taken their passage, was entered, the trunk broken open, and the gold of Graves was stolen.

The present action is brought by his administrator to recover the value of the gold and other property left by Graves at his death, upon the ground that the defendant had " kept, or wasted, or disposed of the same, or had converted it to his own use." The defendant's answer admits the fact that Graves died, leaving in his tent the gold and other property, and that the defendant had attempted to bring it home for the benefit of his family here, and states the fact of the robbery by which it was lost. A precise statement of the allegations in the pleadings, or of the evidence given, is not necessary to the understanding of the questions of law involved in the case. The court, at the instance of the plaintiff, gave the following instructions to the jury :

3. That in this case, the defendant is bound in law to prove to the satisfaction of the jury that, in the transportation and carrying of the money, gold, &c., of the plaintiff's intestate, from California to Missouri, he used due and proper diligence in preventing the loss of the same.

4. That the question of diligence is a relative question, and the amount to be observed by a carrier in the preservation of property entrusted to his care, depends upon the circumstances of danger which surround him. A carrier is always bound to use every exertion in his power to preserve the property entrusted to his care, and any omission on his part to use all ordinary, proper and due precaution to preserve the same, renders him liable to the extent of the loss that may occur.

5. If the jury believe from the evidence, that the money, gold dust, gold and other property which defendant took into his possession, belonging to John Graves, deceased, after his death in California, was lost by defendant from want of proper and due diligence on the part of defendant to preserve and safely transport the same to Missouri, then he is liable for the amount of the same, and they should find for the plaintiff the amount they believe defendant received.

8. If the defendant took possession of money, gold and gold dust of John Graves, deceased, which was in California, at or after the death of said Graves, and removed the same from California after said death, without the order of a court having jurisdiction in the matter, and lost the same in New Orleans on his return to Missouri, by ordinary neglect, he is responsible to the plaintiff, as administrator of said Graves, for the sum so lost.

The plaintiff asked the following instructions which were refused :

1. If the jury believe from the evidence, that John Graves, the plaintiff's intestate, died in California about the 22d day of February, 1850, having in his possession at the time of his death, a large amount of money, gold dust, gold and other property, and that the same was taken possession of by defendant, after the death of said John Graves, without lawful authority, and that defendant afterwards paid to Henry Cox the sum of one hundred dollars or any other sum out of the assets of said decedent for services rendered by said Cox to said decedent in his life time as a physician, he, the said defendant thereby became responsible for the amount so taken possession of by him, except the amount so paid by him to said Cox, and they should find for the plaintiff the value of the amount they believe from the evidence he received ; provided they further believe that the plaintiff, after the granting of letters of administration, and before the trying of this suit, demanded the same from defendant and he refused to pay over or deliver to plaintiff the same.

2. If the jury believe from the evidence, that the defendant took possession of the effects of John Graves, deceased, in California, for the purpose of bringing them to Missouri, and that afterwards the plaintiff, being the administrator of said deceased, demanded the said effects of said defendant, and that he refused to pay over or deliver up the same, they must find for the plaintiff, unless they further find that in the transportation of the same the defendant lost them by inevitable accident.

6. If the jury find from the evidence, that said John Graves, deceased, died about the 22d day of February, 1850, having in his possession a large amount of money, gold, gold dust and other property, and that, after his death, defendant took possession of said money, gold, gold dust and other property, or any part thereof, in California, and brought the same out of California, and on his trip to Missouri, lost the same by larceny or robbery, he thereby became liable to the administrator of Graves for the same.

7. The defendant had no lawful right to remove the money, gold and gold dust of John Graves, deceased, out of California, after the death of Graves, and if defendant so removed the same out of California and lost the same in New Orleans, on his return to Missouri, such loss does not excuse defendant from liability for the same, and the jury should find for the plaintiff, if they find from the evidence that, after letters of administration were granted to him on the estate of said deceased, and before the institution of this suit, he demanded the said money, gold and gold dust of the defendant, and defendant refused or neglected to pay or deliver the same to plaintiff.

The court, at the request of the defendant, gave the following instructions:

1. If the jury shall find from the evidence in this case, that the defendant and Graves were mining together in a wild, unsettled portion of California, and that said Graves and said defendant and his brothers were living together in a tent, and that said Graves died and left gold dust in said tent only occu-

pied by said Graves, said defendant and his brother, and that, after the death of said Graves, said defendant and his brother left said tent to return to Missouri, their place of residence, and that of said Graves, it was proper and right for them, in the state of affairs existing in said country, to bring said gold dust to Missouri and deliver it up to the administrator of said deceased.

2. That it was proper and lawful for the defendant to bury the deceased, to defray the necessary expenses of his last sickness, and to pay the physician's bill for said last sickness, and that such acts did not constitute him an executor *de son tort*, or make him responsible.

3. That the jury should decide from all the evidence, whether the defendant, in bringing said gold dust to Missouri, exercised ordinary care and diligence, under all the circumstances, and if they find that he did so, and that he was robbed, or said money stolen from him, they should find for the defendant.

The jury found a verdict for the defendant, upon which the court rendered judgment, and the plaintiff appealed.

The plaintiff, in the instructions refused by the court, relies upon the supposed illegality of the defendant's act in intermeddling with the property of Graves in California, and attempting to bring it home, as making him responsible for the value of the property, notwithstanding the subsequent robbery; and secondly, that if the property was lost while in course of transportation to Missouri, the defendant is responsible, unless the loss happened by inevitable accident. The instructions given by the court admitted the liability of the defendant, if he had failed to use reasonable care in the transportation of the gold. The liability of the defendant is claimed in the petition to have arisen from the fact, that the defendant " took the property into his possession without any authority whatever, and has kept, or wasted, or disposed of the same, or converted it to his own use."

1. The defendant, when his companion died, leaving gold and a few articles of wearing apparel and some tools in a tent

in the unsettled mining portion of California, took possession of the property, not claiming it as his own, and not seeking any advantage to himself from the use of it.   There is no concealment of the fact that he has the possession, for he takes it to where the acquaintances of Graves are to be found in California, and who were from the same county in Missouri, and he informs them that it belongs to the deceased, and has it weighed by them, and a memorandum of the fact made.    It is impossible that any person can believe that it was the defendant's duty to leave the gold and other effects upon the ground, or in the tent where Graves died, exposed to every marauder who might pass by.   The Israelites were taught better law, when they were commanded in this language : Thou shalt not see thy brother's ox or his sheep go astray and hide thyself from them : thou shalt in any case bring them to thy brother. And if thy brother be not nigh unto thee, or if thou know him not, then thou shalt bring it unto thine own house, and it shall be with thee until thy brother seek after it, and thou shalt restore it to him again.   In like manner shalt thou do with his ass, and so shalt thou do with his raiment, and with all lost things of thy brother's."

The common law, while it makes a man an executor *de son tort* by slight intermeddling with the goods of a deceased person, when the acts are of a character that can only be properly done by an executor, yet it does not impose the hazard of such executorship upon a man who merely discharges the duties of kindness and charity, " such as locking up the goods for preservation, directing the funeral in a manner suitable to the estate which is left, and defraying the expenses of such funeral himself, or out of the effects of the deceased, making an inventory of his property, feeding his cattle, repairing his houses, or providing necessaries for his children."   1 Williams on Executors, 214.   The instances of exemption here given are but examples, and from them we can see the application of the principle to a case like the present.   Although some of the acts of the defendant, such as selling the wearing apparel of the de-

ceased, would give him the character of executor *de son tort*, if done in a regularly organized community, living under the common law, yet in the circumstances in which the defendant was placed, in a part of California where there was no civil organization, the act was one of kindness, exposing the defendant to no hazard in the law. · It is apparent, in the whole case, that· the defendant was endeavoring to bring the effects of the deceased to be administered and disposed of according to the law of Missouri, the place of his domicil, and whatever might be the right of an administrator in California, if there had been one, to complain of the defendant for attempting to remove the effects, the administrator here, under the circumstances of this case, cannot hold the defendant responsible for the mere act of removal.

2. The charge in the petition that the defendant kept, wasted, disposed of, or converted the property to his own use, is put in issue by the answer, and the circumstances of the loss are detailed in the answer. If the defendant is not held liable for the original taking of the property into his possession, he can only be held liable for such negligence in its transportation as would subject a carrier without reward to such liability. A mandatary or carrier without hire is only responsible for gross negligence. Angell on Carriers, sec's 17, 21. The instructions given by the court in this case, were as favorable . to the plaintiff as he had any right to ask, upon the point of the care required of the defendant. The judgment is, with the concurrence of the other Judges, affirmed.