MAGNER, Appellant, *vs.* RYAN & DELANEY, Respondents.

1. A person cannot be charged as an executor of his own wrong, by reason
of acts done as the servant or agent of another.
2. A subsequent grant of letters of administration legalizes the acts of an
executor *de son tort*.

*Appeal from St. Louis Law Commissioner's Court.*

This was an action brought by Magner, to recover the amount
of a debt due him from Thomas O'Keefe, deceased, against
Ryan & Delaney, as executors of their own wrong.

The indebtedness was admitted. The following facts ap-
peared in evidence : O'Keefe died owning a lease on a house,
the lower story of which he had occupied as a shoe shop, and

the upper story as a boarding house. At the time of his death, he had chattels of the value of $180 to $200 in the shop, and household furniture of the value of $100 in the upper story. He left no money to pay his funeral expenses or the expenses of his family; and his widow, being sick, procured the defendant to sell the stock in the shop for the purpose of paying the funeral expenses. Delaney, accordingly, took an inventory on the day after O'Keefe died, and kept the shop open a week or ten days, during which time he sold stock to the amount of $170 or $180. He paid over the proceeds to the widow, and acted in the whole matter for her. The widow applied the money to the payment of funeral expenses, rent, and wages of hands in the shop and servants in the house. Afterwards, she was appointed and qualified as administratrix of her husband's estate. Under the instructions of the court below, the plaintiff submitted to a nonsuit, and appealed to this court.

*Frémon & Reber*, for appellant. The defendants were liable as executors *de son tort*. 1 Williams on Executors, 210–1–2. They could not defend under the authority of the widow, for she also was a wrong-doer, and they knew it. Williams, *supra*. Payment of the money to the widow, before her appointment as administratrix, is no defence. Her bond did not cover the money. The goods sold were not properly administered. Part of the money was applied by the widow to the payment of demands of the same degree as the plaintiff's.

*H. N. Hart* and *J. H. Reed*, for respondents, cited Toller on Executors, 39, 367. 3 T. R. 590. Comyn's Dig. tit. Administrators, ch. 3. 8 J. R. 126. Moore, 126. 15 Mass. 307. 1 Salk. 313.

RYLAND, Judge, delivered the opinion of the court.

1. Do the facts set forth in the statement make the defendants, Ryan & Delaney, executors of their own wrong, of the estate of Thomas O'Keefe?

It seems that, at the death of O'Keefe, the defendants were the agents of his widow, and she, being without means to support the family, having no money on hand to pay the funeral expenses with, or to procure sustenance for herself and children, she being sick at the time, procured Delaney to sell the stock for the purpose of paying the funeral expenses ; that he paid over to her (the widow) all the proceeds of such sale, and she paid out all the money she received, for funeral expenses, for wages of servants in the house, for wages of hands in the shop, and for the rent of the house. It seems that the value of the goods in the shop was from $180 to $200, and that the household goods were worth about $100 ; that the widow was regularly appointed administratrix of the estate of her deceased husband, before this suit was instituted. Now, from an examination of the evidence on the record, it must strike every one that all that these defendants did, in regard to this estate, was done by the procurement and direction of the widow ; it was done for her and by her orders and commands. If any one, then, was executor of his own wrong in this case, it was the widow, and by her taking out letters of administration, the acts done were all legalized, and this suit cannot be maintained against these defendants. The widow was the principal ; she was directing, and these defendants were but her agents or servants. These defendants did not interfere with the goods of the estate of their own voluntary choice ; they assumed to exercise no control or rights in and to the property ; all that they did was done by the order of Mrs. O'Keefe, the widow, and must, in law, be considered as her acts, and they merely her agents.

From the amount of the valuation of the property, there is some doubt whether the widow was not entitled to the whole. She is allowed to take $200 of the estate at the appraised value, in preference to the creditors ; and this, too, in addition to " all the wearing apparel of the family, wheels, looms and other implements of industry; all yarn, cloth and clothing made up in the family for their own use ; all grain, meat, veg-

etables, groceries and other provisions on hand, and provided and necessary for the subsistence of the widow and her family, for twelve months, and as many beds, with bedding, as shall be necessary for herself and the family of the deceased, residing with her and under her control."

The case of *Givens* v. *Higgins, Executor of Higgins*, 4 McCord, 286, is somewhat similar to this : the action was to recover a demand which the plaintiff had against Robert Givens, deceased, from the defendant, as executor *de son tort*. The debt was proved. It was then proved that, immediately after the death of Givens, the defendant employed a wagoner and removed the effects about five miles ; that he paid a debt against Givens with some of the property ; that he was twice seen riding a horse which belonged to Givens, and had occasionally ploughed with the horse. The defendant then proved by the widow that she was sick when her husband died, and that she had requested the defendant to move her and her property to her mother's, and that all the other acts were performed by the defendant at her request.

The court held that the acts of intermeddling, as proved, were not sufficient to constitute the defendant executor *de son tort;* and that they being done at the request of the widow, was a sufficient justification and explanation of his conduct. The jury found a verdict for the defendant ; a new trial was moved and refused. The court stated, in overruling the motion for a new trial, that " there is no doubt that any intermeddling with the estate of a deceased person, such as collecting money, paying debts with the funds of the estate, or making any other disposition of any part of the property, will make a person executor of his own wrong. In some of the old cases, the doctrine has been carried to an extravagant, even to a ridiculous extent. A person has been held liable as executor in his own wrong, for taking a dog, and a wife for milking the cow of the deceased husband. But such a principle would not be sustained at this day. The intermeddling must be such as to manifest a right to control or make disposition of the effects

the deceased. Acting merely as a servant will not make a person so liable. Per Buller, J., in *Padget et al.* v. *Priest et al.*, 2 T. R. 97. Thus, for instance, if a widow should employ an overseer to superintend the plantation of her deceased husband, a wagoner or boatman to carry the crop to market, a factor to sell it, and a clerk to collect and pay away the money under her directions, these several persons, not knowing in what character she was acting, would be considered merely as her agents, and not as exercising such control over the funds of the estate as to make themselves liable. Such appears to have been the character in which this defendant acted; he acted merely as the agent of the widow. He did not pretend to have any control over the property, and knew not, probably, to whom it belonged. There are many acts which a person may do without making himself executor *de son tort;* such as locking up the goods for preservation; directing the funeral in a manner suitable to the estate which is left, and defraying the expenses of such funeral himself, or out of the deceased's effects; making an inventory of his property; feeding his cattle; repairing his houses, or providing necessaries for his children; for these are offices merely of kindness and charity. 1 Williams on Executors, 215. When an executor *de son tort* takes out letters of administration, his acts are legalized, and are to be viewed in the same light as if he had been rightful executor, when the goods came into his hands. 15 Mass. Rep. 325, *Andrew* v. *Gallison's Executor.* 8 John. 126, *Rattoon* v. *Overacker.* Letters of administration have relation back to the death of the intestate. 1 Williams on Executors, 334.

Under this view of the law governing such cases, the court below decided properly. We will not notice the instructions given or refused, in order to make a critical examination of them. We are satisfied, from the facts in proof, that the defendants are not executors of their own wrong; that, if there was any such executor *de son tort*, it was the widow, and her appointment and qualification as administratrix before the

commencement of this suit, and after the acts charged to have been done, afford a complete defence ·to such suit, if it had been brought against her.

The judgment below is affirmed, with the concurrence of the other judges.