29   569
103m342

</div>

---

ED. ROZELLE, Respondent, v. JACOB HARMON, Appellant.

Kansas City Court of Appeals, March 19, 1888.

1. ADMINISTRATION—EXECUTOR DE SON TORT—ACTION OF TROVER AGAINST.—Under the probate system of this state, there cannot be an executor *de son tort* in so far as to authorize a single creditor of the intestate to maintain an action of trover against him, and thereby appropriate the whole assets to the payment of a single debt. The ancient rule at common law, which authorized this, is regarded as inapplicable and obsolete, under such a statutory system as exists in this state. (3 Redfield Law of Wills, 21). But a suit is maintainable by the administrator *de jure* against a wrongful intermeddler for conversion.

2.   ———— Purpose of Present Statutes.—The effective provisions of
the administration law of this state, whereby the whole estate of
a decedent, both real and personal, may be subjected to the pay-
ment of his debts, were designed to supersede the machinery of
the common law ; and the whole doctrine of equitable assets,
marshaling assets, etc., is without application here (in the case of
estates), except so far as the principles may be involved for illus-
tration or explanation of analogous remedies under the statutes.

Appeal from Holt Circuit Court, Hon. Cyrus A.
Anthony, Judge.

*Reversed and petition dismissed.*

*Certified to Supreme Court.*

Statement of case by the court.

This is an action by which plaintiff seeks to hold de-
fendant liable as an executor *de son tort.*

1.   The petition charges that, on the twenty-fourth
day of March, 1880, one B. W. Ross executed his note
to R. H. Russell for one hundred and seventy-five dol-
lars, due in one year, with plaintiff and J. D. Goodpas-
ture as sureties, with ten per cent. interest, to be paid
annually.

2.   That Ross died in July, 1884, leaving the note
unpaid ; that at the time of his death he was owner and
possessed of a large amount of personal property, con-
sisting of hogs, horse and buggy, library, surgical in-
struments, corn, money, notes and book accounts, and
assets, amounting in the aggregate to some fifteen hun-
dred dollars ; that Ross was indebted at the time of his
death for the note given to Russell, aforesaid, besides
some other small amounts.

3.   That defendant, immediately after the death of
Ross, took possession and charge of the property afore-
said, of which Ross died seized, sold and converted it
into money and paid part of the indebtedness of Ross,
but refused to pay said note to Russell or any part,
although he had ample means of said deceased, Ross,
with which to have paid the same

4. That plaintiff, as security, paid the amount of said note ($210.25) to said Russell on the twenty-sixth day of August, 1885.

5. That defendant, by his wrongful acts, by taking charge of the property and assets of said deceased, converting the same into money, and failing and refusing to pay off the indebtedness of said deceased, became and is liable to plaintiff for said sum of $210.25, with interest at six per cent. from the twenty-sixth day of August, 1885.

The answer admitted that said Ross died on or about the twelfth day of August, 1884; and stated that he left a wife, the daughter of defendant, who has made her home with defendant's family since the death of her husband; that he gave to his said daughter at different times while she lived with said Ross, money and property of the value of over one thousand dollars, which money and property were used and held as the sole and separate property of said wife by agreement between her and her said husband; that a part of said property, and other property, the proceeds and earnings due and owing to her as the wages of her separate labor, were still owned and possessed by her at the death of her husband; that defendant, at the request of his said daughter and of her agreement, and not otherwise, assisted her in the management and disposal of a part of said property since the death of her said husband; that said Ross had no property of any kind, except a few books and surgical instruments of little or no value; that defendant at no time took charge of, sold, or attempted to sell or dispose, of any of the effects of said deceased, Ross.

The plaintiff recovered judgment; and defendant has appealed.

L. R. KNOWLES, JOHN EDWARDS, and H. S. KELLEY, for the appellant.

I. The court erred in refusing the instruction in the nature of a demurrer to the evidence, for the reason that the petition did not state a cause of action against

the defendant, nor did the evidence establish any liability against him for which the plaintiff could maintain this suit. There was no privity between plaintiff and defendant. The defendant was not a party to the Ross note which plaintiff paid, and he made no promise that could be enforced. But the plaintiff seeks to hold defendant liable as an executor *de son tort*, *i. e.*, "as one who, without being executor, etc., intermeddles or collects debts due to deceased," etc. *Swift v. Martin*, 19 Mo. App. 488 ; 1 Williams on Executors, 148.

II.   We do not deny but one may be guilty of such acts as would render him liable as an executor *de son tort*, not to a creditor of the deceased, but to the rightful executor or administrator of the estate. *Croslin v. Baker*, 8 Mo. 437 ; *Graves v. Poage*, 17 Mo. 91 ; *Magner v. Ryan*, 19 Mo. 196. And such liability would be sustained as to property which could not be recovered or made applicable to the payment of general creditors, as where the defendant was a fraudulent purchaser from the deceased. *Simonton v. McLain*, 25 Ala. 353 ; *Foster v. Nowlin*, 4 Mo. 18.

III.   Our system of administration contemplates that estates shall pass through the hands of legal representatives, and that the property and assets of the estate shall be applied to the payment of debts of the same class without partiality or preference. *State ex rel. v. Moore*, 18 Mo. App. 411. In speaking of this system our Supreme Court says : "That the simple yet effective provisions of our administration law, whereby the whole estate of a deceased is subjected to the payment of his debts, were designed to supersede the cumbrous machinery of the common law, and afford an ample and complete remedy in themselves. Our probate courts were established with extensive powers and jurisdictions, for the purpose of doing everything necessary to the full and final administration of an estate,   *   *   *   in general, to do everything essential to the final settlement of the affairs of the deceased, and the claims of creditors

against the estate," etc. *Pearce v. Calhoun*, 59 Mo. 271 ; *Titterington v. Hooker*, 58 Mo. 593. To sustain this action would contravene the scheme and policy of our statute, and place an entire estate at the disposal of a single creditor, with no responsibility to any court or persons, for in such case the judgment is executed for the sole benefit of the creditor suing, to the exclusion of all other creditors. Toll. Exr., 472, note 1.

IV. We have discovered that in those states in which the statutes have attempted to place creditors upon an equality in the matter of payment, the courts have declared that there can be no such person as an executor *de son tort* in the sense of the English law. *Dixon v. Cassell*, 5 Ohio, 533 ; *Fox v. Van Norman*, 11 Kan. 214 ; *Barasien v. Odenn*, 17 Ark. 123 ; *Rust v. Wetherington*, 17 Ark. 129 ; *Ausley v. Baker*, 14 Tex. 607 ; *Green v. Rugeley*, 23 Tex. 539 ; *Pryor v. Downey*, 50 Cal. 400 ; 3 Redfield on Wills, 21.

V. The Missouri statute provides ample means for compelling the delivery of any property belonging to a decedent to his personal representatives. Rev. Stat., sec. 75 ; Laws Mo. 1881, 32 ; Kelley's Prob. Guide (Ed. 1884) sec. 237. Any creditor may take out letters, if those having the prior right failed to do so (Rev. Stat., sec. 9) ; or the estate may be placed in the hands of the public administrator at the instance of any creditor. Rev. Stat., sec. 306. And our statute establishes a rule of uniformity and equality in the payment of debts, by which all creditors of the same class stand upon equal footing.

VI. The instruction asked by defendant should have been given, and those asked by plaintiff should not have been given, because, unless the matter complained of was tortious,—a trespass,—defendant was not guilty as executor *de son tort*. If he had an interest in the property as partner, or joint owner, or took it under a claim of right, he was not chargeable as executor in his own wrong. *Cook v. Sander*, 15 Rich. (S. C. Law) 63 ;

Williams' Executors (5 Ed.) 229, 231, and notes; *Deasler v. Edwards*, 5 Ala. 31; *Leach v. House*, 1 Bailey, 42.

VII.    The instructions were contradictory, inconsistent, and calculated to mislead the jury, and this is reversible error.    *Frederick v. Algaier*, 88 Mo. 598; *Price v. Railroad*, 77 Mo. 508; *Type Foundry v. Pub. Co.*, 3 Mo. App. 142.

VIII.    The verdict was against the evidence.    The horse and buggy and harness, were clearly her separate estate.    A few small articles were disposed of by the widow and her father, the defendant as her agent, and they paid all that was realized from that source, and more, on debts, leaving as the only property upon which deceased could have had any claim, the half of the corn, worth three hundred dollars, and the half of the hogs sold after fatted for $277.50, making a total of $577.50. After deducting her dower of four hundred dollars, there would be only $177.50, and she was entitled to one year's provision.    Rev. Stat., secs. 105–7, 257; Kelly's Prob. Guide, sec. 231.    If such grain, meat, vegetables, groceries, etc., were not on hand the probate court was bound to make her a reasonable allowance out of the personal assets to supply the deficiency.    If the estate did not exceed the amount the widow was entitled to, no letters should be granted.    Rev. Stat., sec. 2.

IX.    No person, not even plaintiff himself, cared to take out letters, and for the very good reason that, after the widow had been accorded her rights under the law, there would have been nothing to administer.    Under such circumstances, defendant could not be liable as executor *de son tort* to the plaintiff, or even to an administrator.    *Craslin v. Baker*, 8 Mo. 437.    We submit that the case should be reversed, and the cause dismissed by this court.

E. Van Buskirk and T. C. Duncan, for the respondent.

I.    The court properly refused defendant's instruction in the nature of a demurrer to the evidence.    The

defendant was an executor *de son tort*, by reason of his intermeddling with the estate of Ross, and liable to a creditor as well as to the right executor. 1 Williams on Executors, (6 Am. Ed.) top page 5, 296, 298, 305, 309; *Foster v. Nowlin*, 48 Mo. 18; *Craslin v. Baker*, 8 Mo. 437; *Graves v. Poage*, 17 Mo. 91; *Magner v. Ryan*, 19 Mo. 196; *Swift v. Martin*, 19 Mo. App. 488; *McMeekin v. Hynes*, 15 Rep. 655; Kelly's Prob. Guide, sec. 146.

II. Under our system of jurisprudence the common law and statutes and acts of parliament, made prior to fourth reign of James I., which are of a general nature, not repugnant or inconsistent with the constitution of the United States, or of this state, or the statute laws in force for the time being, prevail, and shall be the rule of action and decision, etc. Rev. Stat., sec. 3117; *Lindell v. McNair*, 4 Mo. 380; *Picotte v. Cooley*, 10 Mo. 199; *Landes v. Perkins*, 12 Mo. 239; *Paddock v. Walsh*, 15 Mo. 525; *Miller v. Dunn*, 62 Mo. 216. And statutes in derogation of common law must be strictly construed, and are to receive such construction as not to allow them to infringe upon the rules or principles of the common law to any greater extent than is plainly expressed. *State v. Clinton*, 67 Mo. 380; *Bridge Co. v. Ring*, 58 Mo. 491; *Yankee v. Thompson*, 51 Mo. 234. Our administration act does not in express terms, or even by implication, take away from a creditor of an estate his common-law right to proceed against an executor *de son tort*, although it gives such creditor the right to administration, and to have estate placed in hands of public administrator. Rev. Stat., secs. 7, 8 and 9; Williams on Ex'rs (6 Ed.) top page 305; *Swift v. Martin*, 19 Mo. App. 488, and cases last above cited. In most, if not all, of those states in which executors *de son tort* do not exist, or are not recognized, either the common law does not prevail, or the subject is controlled by express statute. Minnesota Stat., 1878, chap. 77, sec. 5; Minn. Sup. Ct. 1882; *Noon v. Finnegan*, 13 N. W. Rep. 197, and statutes cited; s. c., 19 N. W. Rep. 391.

III.   The defendant was neither a partner nor a
joint owner of the hogs or corn, and even if he were, he
could not under his answer, alleging that the same was
the sole and separate property of Mary Ross, and that the
defendant was her agent only as to such separate prop-
erty, be permitted to claim the same.   The widow may
become an   executor *de son tort*, by intermeddling with
the estate of her husband, even though she claim to be
the owner of the property, or if she take more of the
property than she is entitled to ; any intermeddling that
manifests a right to control or make disposition of the
property or effects of the deceased is sufficient.   1 Wil-
liams on Ex'rs (6 Ed.) 298 ;   *Perkins v. Ladd*, 114 Mass.
420 ;   *Magner v. Ryan*, 19 Mo.  196.

IV.   The court rightly gave instruction asked by
plaintiff and refused those asked by defendant.   The
title to the property was in the purchaser by sale and
delivery.   *Clark v. Clark*, 86 Mo. 114 ; *McCoy v. Hyatt*,
80 Mo. 130.   The answer of defendant alleged that he
only took possession of the separate property of widow,
and was agent for that purpose only, while, by said
instruction if given the jury would have been told, that
if defendant took any property not the sole and separate
property of widow, as her agent, he would not have been
liable.   The other refused instructions should not have
been given for the reason that evidence tending to show
a promise made by defendant to pay plaintiff's debt was
proper to be considered by the jury with the other state-
ments, admissions, and circumstances in proof, in de-
termining the title and ownership of the property ;
capacity in which defendant was acting ; the nature and
object of his intermeddling ; and his knowledge of the
want of legal right in himself or the widow of Ross, to
act in the premises.

V.   The instructions given were not contradictory,
inconsistent, or repugnant, but all taken together fairly
present the law on both sides, and present the whole
case in a manner that is not calculated to mislead the
jury.   *Henschen v. O'Bannon*,  56  Mo.  289 ;  *Moore v.*

*Sanborn*, 42 Mo. 480; *McKeon v. Railroad*, 43 Mo. 405; *Marshall v. Ins. Co.*, 43 Mo. 586; *Budd v. Hoffheimer*, 52 Mo. 297; *Porter v. Harrison*, 52 Mo. 524; *Davis v. Brown*, 67 Mo. 313; *Noble v. Blount*, 77 Mo. 235. We think that part of the instructions given for both plaintiff and defendant, allowing the jury to deduct the four hundred dollars dower allowed to the widow by the law was erroneous, for the reason that dower right is a personal privilege and can only be claimed by the widow herself, and that, too, prior to its being paid out on the debts, and she not having claimed it (or applied for it before it was sold) in this case appellant was not entitled to hold same against the creditors. Rev. Stat., secs. 107, 108, 109. A judgment will not be reversed for an error in an instruction when one given at instance of appellant contains the same error. *Noble v. Blount*, 77 Mo. 235; *Leabo v. Goode*, 67 Mo. 126.

VI. The verdict is well sustained by the evidence. The jury heard the whole of the testimony; passed upon the credibility of the witnesses and weight of evidence. The whole case was fairly submitted under instructions most favorable to defendant, and the verdict and judgment was for the right party and should not be disturbed.

VII. In no event is an executor *de son tort*, entitled to credit for the widow's dower, additional absolute property, or yearly allowance. Nor can he claim the property of the deceased where the probate court would be authorized to refuse grant of administration. The amount of yearly allowance to family of deceased is purely discretionary with the probate court and cannot be submitted to a jury. And defendant, in this case, under his answer, is estopped from making any such claim. If he desires to protect himself or the rights of the widow, he can only do so by administering under the law. Rev. Stat., secs. 105, 106; Rev. Stat., sec. 2; *Whaley v. Whaley*, 50 Mo. 511.

PHILIPS, P. J.—The important question presented for decision by this appeal is, whether there can be, under the probate system of this state, an executor *de son tort*, in so far as to authorize a single creditor of the intestate to maintain an action of trover against him, as here sought, and thereby appropriate the whole assets to the payment of plaintiff's debt?

That such was the ancient rule at common law is not questioned. But that it should longer prevail in this state, in view of our statutory system of administering dead men's estates, is denied by appellant.

Judge Redfield, in his work on the law of Wills (vol. 3, p. 21, note 6), regards the common-law rule as inapplicable and obsolete under such a statutory system as exists in this state. He says: "The American courts have sometimes held such persons liable to an action at the suit of creditors of the estate. But there has always been manifest a marked disposition here to narrow the range of such responsibility, and virtually to expunge the term from the law. It is, in itself, a subject resting upon no just basis of correlative rights and responsibilities, but operates chiefly in the nature of a penalty, for intermeddling with effects of deceased persons. We have devoted no space to the topic in this work, because it is so nearly obsolete in the American courts, that it would seem unjust to the profession to tax them with the expense of what is only speculatively useful. The early American cases discuss the topic only in a theoretical point of light, finally coming to the conclusion that if it were conceded that one may incur the responsibility of an executor in his own wrong, the case in hand is not one of them." So it was observed in the more recent English case of *Cary v. Hills*, L. R. 15 Eq. 79, which was a bill in equity against an executor *de son tort* for an account of the goods in his hands, the action could not be expected to be maintained, as "a more appropriate remedy would seem to be an action of *tort* in the name of the personal representative."

In *Dixon v. Cassell*, 5 Ohio, 533, the court, after stating the provisions of the administration law of that state for securing the appointment of an administrator, say: "Creditors of the decedent are entitled to an equal distribution of the assets free of lien; no one can get the preference. Judgments are against assets to be administered, and are only to be levied upon assets. This equality would be destroyed, if suits are sustained by any creditor against those having custody of goods of the defendant, as the executor *de son tort*. It is unnecessary to sustain such suit, and we are unwilling to afford the opportunity, as we must if we sustain this suit, for one creditor by contending with a person having the custody of a decedent's effects, to appropriate the whole assets to his individual debt, to the exclusion of all other claims."

This subject has been well considered by the court of appeals of Texas. In *Ansley v. Baker*, 14 Texas, 607, the court makes an observation quite opposite to the rule under our statute; that while a general creditor of the decedent may go into the circuit court, in the first instance, to establish by judgment the validity of his claims, he cannot enforce it by execution *de bonis testatoris*, but must have his judgment probated and take its place in the prescribed classification; yet, if the general creditor may sue the wrongful administrator in the common-law court and recover judgment, he may take out execution *de bonis testatoris*, and upon return of *nulla bona*, he may then have one *de bonis propriis*, to the extent of the whole value of the property taken by the wrongdoer, without submitting to probate, classification, or *pro-rata* distribution. Ch. J. Hemphill then said: "The statute vests very ample jurisdiction in the county court over the estates of dead persons, especially in relation to debts, and subsequent partition. The intention was, obviously, to form a complete system; to provide for all contingencies; to adjust a mode of settlement sufficiently comprehensive to embrace all estates, with capacities to extend

justice to all who would apply, under its provisions ; to
have all the debts and assets before the county court,
that none might suffer, who were entitled under the law ;
and at the same time to form a system so intelligible to
a common understanding, as to be susceptible to admin-
istration by men of plain common sense.  *  *  *  To
introduce an executor *de son tort*, with his rights and
liabilities, would mar the intended symmetry, and
increase the perplexity, of the system.   To permit the
estate to be charged and its assets applied in another
mode and by different tribunal from that prescribed
by law, would be at war with the policy of the stat-
ute, and would produce discord and confusion where
harmony might and should exist." This was followed
in *Green v. Rugely*, 23 Texas, 539 ; quoting Lord Cot-
tenham in *Tyler v. Bell*, 14 Eng. Ch. R. J. 109 :
"That an estate cannot be administered in the absence
of a personal representative, and that such personal
representative must obtain his right to represent the
estate from the ecclesiastical court in this country, has,
I believe, never been doubted." Again : "Our statute,
creating the descent, both real and personal, directly
and immediately upon the heirs and distributees, subject
to an administration, does not vary this, as an ordinary
rule, otherwise than by creating exceptions, when the
reason of the rule does not exist." So it was expressly
held that no such office as an executor *de son tort* could
be recognized under the statute.

This matter was thoroughly considered and ably
discussed by the Supreme Court of Arkansas in *Bara-
sien v. Odum*, 17 Ark. 122. The reasoning of this case
is irresistible. The statute of that state concerning
administrators and executors is quite like ours in all
essentials bearing on this issue. The argument is, that
the statute has provided a complete and exclusive pro-
bate system, the capital objects of which are, that the
estates of every deceased person shall immediately pass
to the custody of the law, to be administered for the
benefit of creditors ; and after the satisfaction of all

claims against it the residue shall be distributed to the rightful heirs and distributees. "The probate court is intrusted with custody of estates ; and that tribunal proceeds, *in rem*, to adjust the rights of all parties interested in the estate, and disposes of it in accordance with the provisions of the statute ; having for these purposes, the most summary and plenary powers, within the scope of its jurisdiction, conferred by the constitution and statutes, administering both law and equity within this scope, according to the exigency of the rights to be adjudicated upon." In view of the remedial powers of the administration law, extending to almost every conceivable case of the wrongful inter-ference with the property of decedents, it was held there could no longer be any necessity for recognizing the common-law remedy against an intermeddler.

By pursuing, on the contrary, the statutory method by administration the assets when recovered by the administrator or applied as a trust fund ratably, in the order of allowance and classification, among all the creditors. In other words, the whole scheme and policy of our administration law, as founded on the consti-tution, and builded by the statute, is to regard and treat the assets of deceased persons' estates, as a trust fund, passing directly to the legal representative, to be administered, disbursed, and distributed, equally and equitably, under the obligations of the bond, and the supervision of a competent and efficient probate judge. The statute, in this respect, operates like an assignment by death, the right, possession, and control of all the personalty devolving upon the statutory administrator, to be administered as the statute prescribes, and not otherwise.

The same conclusion has been reached by the Supreme Court of Kansas, in *Fox v. Van Nooman*, 11 Kan. 214, where the administration law follows that of this state. So it is said in *Pryor v. Downy*, 50 Cal. 399 ; "No person can fill the position (of administrator *de facto*) except by due appointment and qualification.

Under our system there is probably no such thing as an executor *de son tort*."

But, it is claimed, our Supreme Court has recognized the office of an executor *de son tort*, with its common-law incidents, in the following cases : *Foster v. Nowlin*, 4 Mo. 18 ; *Graves v. Poage*, 17 Mo. 91 ; *Magner v. Ryan*, 19 Mo. 196.

As to the case in the seventeenth Missouri, it is sufficient to say, that was a suit brought by the administrator, *de jure*, against the alleged wrongful inter-meddler for conversion. That, I hold, is the appropriate remedy in such cases. And no matter whether we call the tort-feasor an executor *de son tort*, or by any other name, he is a trespasser, and replevin or trover would lie, according to the fact or *status* of the property, at the suit of the rightful administrator.

The case in the nineteenth Missouri is where the action was brought as against an executor *de son tort ;* but the case, as Judge Redfield says, while apparently recognizing in theory an executor *de son tort*, was permitted to pass off on the ground that the defendant was not in fact the wrongdoer, and the real actor in the matter afterwards qualified as administrator *de jure*, which legalized the wrongful act. Of the case of *Swift v. Martin*, 19 Mo. App. 488, it is only necessary to observe, the action was brought by the administrator against the alleged wrongdoer, and falls within the rule of the case in seventeenth Missouri. The reference in the opinion by Hall, J., to the common-law rule respecting an executor *de son tort*, was merely by way of inducement to the question to be decided, and not as approving the doctrine as applied to a case where a creditor sues the wrongdoer or intermeddler. No such question was presented in that case.

But the question was raised and considered in the case of *Foster v. Nowlin*, 4 Mo. 18. A proper understanding of the facts of that case, and a due observance of the present statute concerning administrations, and the later rulings of the Supreme Court, do not make

that case of controlling force, in my opinion. It probably arose under the administration law prior to the statute of 1835, when the system was less complete and less understood than now. The party there charged as executor *de son tort* set up claim to the property under a bill of sale from the intestate. The plaintiff attacked this transaction as fraudulent against the creditors of the decedent. Mr. Leonard, of the counsel for defendant, at that early day, when our statutory system, and the mind of the profession, were not so fully emancipated from the common-law thraldom as now, discerned and suggested the incompatibility and difficulty of an executor *de son tort* administering, as a rightful administrator is required to do ; and, therefore, contended that it conflicted with the statutory scheme ; as a creditor could thereby collect his entire demand, freed from the incidents of probate, classification, and apportionment, exacted by the statute. Judge McGirk seemed inclined to the opinion, though with evident misgivings, that an executor *de son tort* might, as under the old common-law rule, be required to administer as a rightful administrator. But, I presume, no lawyer would now claim that our statute concerning administrations has aught to do with any administrator other than such as is appointed by the probate court, in the manner designated by the statute, nor as to an administration not conducted thereunder. *Matter of estate of Hamilton*, 34 Cal. 468 ; *Pryor v. Downey, supra ; Tyler v. Bell, supra ; Weise v. Moore*, 22 Mo. App. 535 ; *Wilson v. Wilson*, 54 Mo. 215. Staggered with the force of Mr. Leonard's suggestion, Judge McGirk said : " The answer which first occurs to us is, that if this were proved to be the case (the instance of some friend of the creditor wrongfully taking possession of the assets, and the creditor suing him as executor *de son tort*, thereby getting the whole of his claim to the possible exclusion of other creditors), courts of chancery would interfere and compel the creditor to submit to an apportionment ; would, if necessary, enjoin such proceedings ; and even

in cases where there is no confederacy, where assets ought to be apportioned, would compel an apportionment." This suggestion is opposed to the later holdings of the Supreme Court, and conflicts with the whole policy and scheme of our present administration law. In *Titterington v. Hooker*, 58 Mo. 596-7, Hough, J., said : "Under our statute, demands against the estate of any deceased person are divided into six classes, and are required to be paid in the order in which they are classed, and no demand of one class shall be paid until all previous classes are satisfied. This order of priority could not be disregarded even by a court of equity. If the bill could be maintained, it would be the duty of the court to ascertain whether any debts in the classes having priority over the other classes to which plaintiff's claim belongs remained unpaid, and if so, and the value of the estate sought to be subjected to the satisfaction of plaintiff's claim did not exceed the amount of such unpaid debts having priority over his, to give judgment for the defendants. If there remained no debts in the prior classes unpaid, but debts in the same class, the amount of such unpaid debts should be ascertained, and the proceeds of the lands in the hands of the heirs be divided ratably between them. The whole settlement of the estate might thus be transferred from the tribunal specially established by the statute for the administration of estates to a court of equity, and that, too, after final settlement, having the validity of any other judgment from which there has been no appeal, and which remains unassailed on account of any fraud. * * * We are of opinion, that the precise and simple, yet effective provisions of our administration law, whereby the whole estate of a decedent, both real and personal, may be subjected to the payment of his debts were designed to entirely supersede the more cumbrous machinery of the common law, and that the whole doctrine of equitable assets, marshaling assets in equity for the payment of debts, and bills for discovery of assets and account, is without application here, save in

so far as the principles underlying those proceedings may be involved for illustration or explanation of analogous remedies by our statute."

This was followed in *Pearce v. Calhoun*, 59 Mo. 274, in which Wagner, J., observed: "Our probate courts were established with extensive powers and jurisdictions, for the purpose of doing everything necessary to the full and final administration of an estate. Both real and personal property are under their control for the payment of debts. They possess about the same powers formerly exercised in England by the ecclesiastical and chancery courts. They are authorized to collect the assets of the deceased, to allow claims, to direct their payment. * * * and to make distribution to the parties entitled thereto, and in general to do everything essential to the final settlement of the affairs of the deceased, and the claims of creditors against the estate. With a tribunal clothed with such ample powers, all parties have a sufficient protection and opportunity for the assertion of their rights; at least, if they attempt to proceed otherwise, very strong and satisfactory excuse should be shown for the failure to present the claim in the mode prescribed by law."

The suggestion made by Judge McGirk, above mentioned, was not essential to the determination of the case before the court. And the opinion ultimately was bottomed upon substantial ground. The administrator, if there had been one, could not have assailed the bill of sale, or other act of his intestate, for fraud. Such property, in contemplation of law, is not an asset of the estate passing to or recoverable by the administration. *Brown v. Finley*, 18 Mo. 375; *Criddle v. Criddle*, 21 Mo. 522; *George v. Williamson*, 26 Mo. 190; *Merry v. Freeman*, 44 Mo. 518. In respect of property thus held in trust, by equitable implication, it has ever been the recognized right of a creditor of the fraudulent assignor to pursue it in chancery, and subject it to the payment of his debt, as it is not a legal asset recoverable by the administrator of the assignor or grantor. In all

such instances the maxim applies : *Qui prior est tempore, potior est jure.* It then becomes a race of diligence among the creditors, and he who is first in action is first requited. *George v. Williams,* 26 Mo. 190 ; *Pullis v. Robinson,* 73 Mo. 201. For that reason the action of *Foster v. Nowlin* was sustained.

But the property in the hands of the defendant here was property assets which passed to and were recoverable by the administrator. *State ex rel. v. Moore,* 18 Mo. App. 406. And where the assets have thus been wrongfully appropriated by the intermeddler, as said in *Brasius v. Odum,* 17 Ark. 128, "the remedy provided against him is essentially intended to be at the suit of the rightful administrator." Why, then, any longer recognize in our practice the right of a single creditor to go around the administration law and sue the intermeddler ? If no letters of administration have been taken out by the next of kin, any creditor interested in the estate can go to the probate court and secure the appointment of some suitable person to act as administrator, or secure the appropriate order directing the public administrator to take charge. The administrator is then under bonds, armed with plenary power, and every active agency of the law and the courts, to discover and recover any and all assets of the estate. In this way, and no other, can the wise and just policy of the administration law be accomplished in securing to the creditors and distributees an honest administration of estates, and an equitable apportionment and distribution thereof, while the remedy pursued by the plaintiff in this action tends to defeat all this, and is at war with the high purpose and policy of the statute.

Other errors are assigned by appellant ; but under the view above taken it is unnecessary to determine them, as this action is not maintainable. It follows that the judgment of the circuit court is reversed, and the petition dismissed. Hall, J., concurs ; Ellison, J., nonconcurs in a separate opinion.

ELLISON, J.—I do not wish to be understood as saying the foregoing opinion is right or wrong. I, however, believe it to be in conflict with *Foster v. Nowlin*, 4 Mo. 18, and *Magner v. Ryan*, 19 Mo. 196. If the views announced by the court in this case are to be considered the law of the state, I think it will be more satisfactory, in view of these cases, to have the Supreme Court so declare.

The case will, therefore, be certified to the Supreme Court.