JAMES L. MASON *et al.*, Respondents, v. ST. LOUIS UNION STOCK YARDS COMPANY, Appellant.

St. Louis Court of Appeals, December 18, 1894.

1. **Gratuitous Bailment:** MEASURE OF BAILEE'S OBLIGATION: INSTRUCTION. An instruction in an action by a bailor against a gratuitous bailee for the loss of the subject of the bailment is erroneous, if

it hypothecates the liability of the bailee upon negligence simply without any specification of its degree. The right of recovery in such an action should be predicated upon the existence of gross negligence.

2. ———: ———: ———. *Held*, in the course of discussion, that an instruction requiring a finding of gross negligence should define the meaning of that term.

*Appeal from the St. Louis City Circuit Court.*—Hon. James E. Withrow, Judge.

Reversed and remanded.

*Campbell & Ryan* for appellant.

*D. P. Dyer* for respondents.

Bond, J.—The petition in this case is to wit: "Plaintiffs state that they are now, and were at all of the times hereinafter stated, copartners in business under the name and style of Mason, Young and Company, and engaged in the business of buying and selling live stock and of forwarding the same to St. Louis Union Stock Yards Company; that the said St. Louis Stock Yards Company was at all of the times hereinafter stated, and is now, a business corporation organized under the laws of the state of Missouri, and engaged in the business in the city of St. Louis of receiving, feeding, stabling, yarding and selling all kinds of live stock for hire.

"Plaintiff for a cause of action against the defendant states that on the — day of April, 1892, they were the owners of two head of horses of great value, to wit, of the value of $700; that on said day they shipped said horses by the way of the Wabash Railroad from Jonesburg, in the county of Montgomery, in the state of Missouri, to the stock yards of the defendant in the city of St. Louis, Missouri; that thereafter, to wit, on the — day of April, 1892, said horses were received by the

defendant at its said yards in good and sound condition; that on said last day the said defendant by and through its servants and agents failed and neglected to take reasonable care of said horses, in that it carelessly and negligently turned said horses loose with other horses in an open pen of said defendant at said yards, by reason whereof the horses of the said plaintiffs were injured and rendered worthless by being kicked by each other, and by said other horses; that the injury to said horses was caused by the negligence of the said defendant, its servants and agents, in the manner aforesaid, to the damage of the plaintiffs in the sum of $700, for which they sue and pray judgment."

The defendant answered the foregoing petition by a general denial, and by a further averment that it placed the two horses sued for in an open pen by the directions of plaintiffs. On the trial it appeared that two of the plaintiffs, and one Swedesky, arrived at defendant's yards with a mixed shipment of live stock, about daylight in April, 1892; and that the hogs and cattle contained in said shipment were unloaded and taken charge of by defendant's servants. No controversy exists as to them. As to the five horses contained in the shipment, three belonging to plaintiffs, and two to Swedesky. Plaintiff's evidence tended to show that two of the plaintiffs and Swedesky removed the five horses from the car and tied them safely apart in the "chute pen"; that one of defendant's employees asked plaintiffs "if they wanted the horses sent to the stable and fed, and they told him no; that they were going down town and would be back or send for them, or have Mr. Ruby, who sold their horses, send for them, and, if the defendant needed the pen the horses were in, to move them and tie them up in another pen; that they all had halters on." On this point the yardmaster and other witnesses for defendant testified that, after

they had locked up the cattle and hogs, they applied to plaintiff Young to know what to do with the horses; that he said he did not want them put into the stable—"to tie the halters around their necks and let them run into the pen;" that he explained that he was going down town and would have Mr. Ruby, who sold his horses for him, send for them; that thereupon the horses were turned in the pen with their halters upon their neck before Mr. Young left the yards.

It was undisputed that defendants did not charge persons anything for turning horses into their pens, but only charged for stabling them, and that this was known to plaintiffs. It was further conceded that, when plaintiffs returned after an hour's absence at breakfast—and having gone to Ruby's stable to get a man to take the horses—they found all of the horses running loose in the pen, and two of them much injured from fighting and kicking each other. There was testimony for plaintiffs, that it was not the custom of defendant's servants to tie horses, unless the owner gave notice of bad qualities; that when the owner, however, tied his horses, or directed them to be tied, they were not afterwards turned loose in the open lot. For defendants on this point, there was evidence that defendant's servants never tied any stock turned in by persons into their pens; that the custom was that if the owner wanted them tied, he should go there and tie them himself. The jury returned a verdict for plaintiff for $500, from which defendant has appealed.

The first point made by appellant is that the petition does not state a cause of action. The statements of the petition are imperfect and uncertain, but by reasonable intendment, and after verdict, it can be held not fatally defective. The pleader should have alleged distinctly the kind of bailment he relied upon and the obligations created thereby, also the breach and dam-

ages claimed. The imperfections of the petition in this respect should have been objected to by a motion to make definite and certain; they can not be reached by objection to the introduction of evidence. *Lynch v. Railroad*, 111 Mo. 601; *McDermott v. Claas*, 104 Mo. 14.

The decisive question in this case arises upon the instructions given and refused. The first instruction given by the court for appellant is, to wit:

"The court instructs the jury that the defendant admits having received of the plaintiff two horses in April, 1892; and if you believe and find from the evidence that the defendant, by its servants and agents, turned said horses loose with other horses in an open pen of the defendant at its yards in the city of St. Louis; that it or its said servants or agents were not authorized or directed so to do by the plaintiffs, or either of them, and that in so doing the defendant or its said servants and agents were guilty of negligence, and that in consequence thereof the said two horses, while in said pen, kicked each other or were kicked by other horses in said pen and were injured thereby; then the jury will find for the plaintiffs, even though the jury may further believe from the evidence that the defendant was not to receive any compensation from the plaintiffs for the keeping or custody of said horses."

Upon the said facts hypothecated therein the foregoing instruction was an incorrect statement of the law. By it the court virtually told the jury that a gratuitious bailee is liable for any negligence—however slight—whereby damage is caused to the bailment. The rule of law is the exact reverse of this declaration in the instruction. The distinction between the degrees of care and diligence exacted of bailees with and without reward is nowhere more clearly expressed than by the decisions in this state. In the case of *Wiser v. Chesley*,

53 Mo. 547, Judge SHERWOOD, in discussing an instruction given as to a gratuitious bailment, wherein the jury were told that the bailee must exercise "reasonable care," or that which a "prudent person" similarly situated would practice, used the following words:

"But the court manifestly erred in giving the instruction which it gave on the part of plaintiff, as to the care which the defendant should have exercised. Chesley was but a mere depositary—a bailee without recompense or reward. The contract of bailment was entered into, not for his benefit, but for the benefit of the bailor alone. The measure of the depositary's diligence, therefore, was the slightest known to the law. (Sto. Bailm. secs. 23–64.) And he was responsible only for 'that omission of care which even the most inattentive and thoughless never fail to take of their own concerns,' in other words, for gross negligence. (*Tompkins v. Saltmarsh*, 14 S. & R. 275). And in all mere gratuitous undertakings, whether deposits or mandates, the same general rule as to the diligence to be exercised prevails."

To the same effect is *McLean v. Rutherford*, 8 Mo. 110; *Graves v. Poage*, 17 Mo. 91; *Gray v. Packet Co.*, 64 Mo. *l. c.* 49. These cases show that the speculations of judicial opinion as to the inutility of the terms, slight, ordinary and great, as definitions of the different degrees of care to be observed by bailees—as the bailment is for the benefit of the bailor, the bailee, or both—have not taken any root in the jurisprudence of this state, nor are they supported by the best authorities elsewhere. Schouler on Bailments and Carriers, secs. 15, 16, 35 and 49; *Bank v. Graham*, 100 U. S. 699; *Whitney v. Bank*, 55 Vermont, 155; *Davis v. Gay*, 141 Mass. 531. The terms, slight, ordinary and great, as applied to care, and slight, ordinary and gross, as applied to negligence, are valuable standards for meas-

uring the care and limiting the liability imposed by the several classes of bailments, according as they are made wholly for the benefit of the bailor or bailee, or for their reciprocal advantage. The ground of the difference in the care to be taken in the different orders of bailments rests upon the essential distinction—grounded in natural right between the duties of paid and unpaid service. In applying this principle the law, upon self-evident justice, deems a bailment for mutual benefit one calling for that degree of care which a man of average prudence, similarly situated, would give to his own property or affairs, in other words, ordinary care. As the justice of this rule depends upon the fact that the bailee *is* recompensed, it could not properly be applied to a bailment lacking that element without destroying its support. The law recognizes this logical result, and applies to a bailment *without* recompense the rule that a less degree of care than ordinary, *i. e.* slight care, shall be observed. On the other hand, where the bailment is *altogether* for the benefit of the bailee, the same principle of reasoning demands that he should exercise a higher degree of care than ordinary, or in other words great care. These variations of the degree of care, above and below the standard of ordinary care, are all that is meant by the terms *supra*, applicable to the duties of bailees, as well as those stating the degrees of negligence for which bailees are responsible.

The instruction *supra* was fatally defective in omitting to prescribe the degree of care to be taken by a gratuitous bailee and the correlative degree of negligence for which he is liable. The same fault occurs in other instructions given of the court's own motion. In one of the latter instructions, taken by the court from the form prepared by defendant by striking out the word "gross," there was an additional defect in

that it submitted to the jury the issue as to the excitement of the vicious propensities of the animals by the negligence of defendant, although it had been assumed in the former part of said instruction that the horses were disposed of by defendant according to plaintiff's direction. If the latter proposition was true, the defendant's were not liable, and the further proposition was unfavorable to them and apparently not supported by any evidence in the record.

As this case must be retried, we call attention to the rule which requires instructions using the terms "gross negligence" to give their legal definition, as set forth in the quotation above made from the case of *Wiser v. Chesley, supra.* The petition in this case should also be amended, so as to state fully and explicitly the cause of action relied on by the plaintiffs. As now framed, its significance is vague and doubtful, and would be the subject of a motion to specify.

The objection of defendant to the testimony as to the charges paid for the return of the horses to Jonesburg should have been sustained. Such evidence did not tend to show the difference in the market value of the horses in St. Louis immediately before and after the injury, which was the measure of plaintiffs' damages, if any, in this case. These conclusions constrain us to reverse the judgment herein and remand the cause. Judge ROMBAUER concurs. Judge BIGGS is absent.