FOSTER & FOSTER v. NOWLIN.

**MAY TERM,**
**1835.**

Foster & Foster
v.
Nowlin.

1. By our statute no proof of the Execution of an instrument declared upon is necessary, unless denied by plea supported by affidavit.
2. And if illegal evidence thereof be given (where none was required) it will not make error.
3. The statute applies to Executors and Administrators" sued on notes of their testators or intestates.
4. S. sold slaves to F. After the death of S. the slaves were taken by F.—thereupon the creditors of S. sued F. as Executor de son tort. F. proved that after the sale and whilst the slaves were in possession of S. he declared they were not his, but belonged to F. Held, that the plaintiff might prove that S. also said at another time whilst the slaves were in his possession, that they were his own slaves.
5. The brother of S. and a distributee, not a competent witness for plaintiff.
6. A bill of exceptions details certain evidence, & then says, "*whereupon* the court decided" &c. Held, that this does not shew that all the evidence given in regard to the matter was preserved in the bill of exceptions.
7. Plaintiff may give in evidence records of judgments against S. to shew his indebtedness at the time of the sale of the slaves, although not between parties or privies.
8. A person may be charged as Executor de son tort, *although there be* a rightful Executor or Administrator.
9. S. lived in Tennessee and there died possessed of personal property in that State. After the death of S. the defendants took the property and brought it to Missouri. Held, that defendants may be charged as Executors de son tort in this State.
10. And defendants are liable according to the laws of Missouri—and the laws of Tennessee need not be proved.
11. Verdict, we the jury find the issues for the plaintiff not sufficient under the pleadings in the case. What it should find.

## APPEAL.

The opinion of the court was delivered by McGIRK Justice.*

Nowlin brought an action of debt against Josiah Foster and George S. Foster as Executors of Charles C. Simmons deceased. The defendants pleaded

**Pleadings.**

1st. non est-factum by Simmons.

2nd. That they are not executors of Simmons; on both the pleas issues of fact were made.

3rd. That Simmons died intestate: that after his death and before the commencement of the suit one R. Wash was appointed and yet is adm'r. of the goods &c. of C. Simmons in this State. Replication, that before the granting said letters and after the death of Simmons the defendants took into their possession certain effects of Simmons and converted them to their use, and that the effects were of great value &c. Rejoinder, denying the matter of the replication.

---

*Judge Wash did not sit in this case, being interested in a case in which the same points are decided.

4th. That Simmons died intestate in the State of Tennessee, and after his death and before the bringing this suit, letters of administration of his effects were granted to some person in said State and by the authority of the same. Replication, that after the death of Simmons and before the grant of letters, the defendants took certain property into their hands whereby they became executors of their own wrong. Rejoinder, denying the matters of the replication.

5th. This plea denies that any assets came to their hands. Replication affirming assets.

6th. This plea sets up several judgments as privileged debts and alledges no assets *ultra.*

7th This plea alledges, the defendants fully administered &c. Issue on this plea affirming assets.

The Jury found a general verdict for the plaintiff in these words:

"We the jury find the issues for the plaintiff."

When the evidence was closed the plaintiff asked the court to give the jury several instructions; some of which were given and others were not given. But as no objections are made to these instructions in the argument, we will pass them by.

The plaintiff gave a bond purporting to have been made by C. Simmons deceased, to him, in evidence for the amount of his debt; he then gave evidence tending to prove that many years past, C. Simmons married the daughter of G. S. Foster; that on that marriage Foster sent home with Simmons and wife soon after the marriage certain slaves; that they remained with them till Simmons' death in or about the year 1824. That Simmons had besides these slaves several other slaves which he also kept and used as his own for several years before his death, and up till his death—that Simmons lived in Missouri till about the year 1823, when he left the country and settled in Tennessee, and took with him the slaves in question and that he soon after died.

That during his residence in Missouri he became indebted to Nowlin the plaintiff, and without paying the debt due Nowlin, removed to Tennessee—that while he lived in Missouri G. S. Foster the father-in-law, and J. Foster the other defendant, a brother-in-law, and himself, all lived in Howard county and quite near each other. There was also evidence to shew Simmons was largely indebted when he left the country, and that his departure was rather secret.

It also appears that the defendants on the death of Sim-

MAY TERM, 1835.

Foster & Foster
v.
Nowlin.

Verdict.

Evidence for plaintiff.

Foster & Foster
v.
Nowlin.

mons, went to Tennessee and took possession of the slaves and brought them to Missouri, claiming them as their own property, and that they yet keep and possess them.

It was also proved that after the defendants brought the slaves away from Tennessee, and before the present suit was brought against them, letters of administration were granted in Tennessee on the effects of Simmons.

It also appears by the record that before the bringing of this suit, letters of administration were granted of Simmons' effects in Missouri to R. Wash. This is the substance of the Plaintiff's case in chief.

Evidence for defendants.

The defendants then gave evidence to shew that the slaves which Foster, the father-in-law, let Simmons have on the marriage were only lent to him.

They then gave in evidence of a bill of sale for the other slaves to both the Fosters, which bill of sale purported to be on valuable consideration. This bill of sale bore date prior to Simmons' removal from the State.

Evidence for plaintiff rebutting.

The plaintiff then gave evidence to shew that at and before the bill of sale was made, Simmons was largely indebted and in insolvent circumstances. The defendants on this point introduced rebutting testimony, and then asked several instructions of the court, some of which the court refused. The jury as was before stated gave a verdict for the plaintiff, and he had judgment for his debt and damages. In the progress of the trial several points were made by the defendants, arising out of the introduction of testimony which will be noticed in the order in which they arose in the argument of Foster's counsel. We will only attend to the points relied on by the counsel for the defendants.

Points made by plaintiff in error.

1st. The first point made in argument by Mr. Leonard, counsel for the appellants is: That the court erred in admitting certain evidence of the execution of the bond, sued on as the bond of the intestate. The defendants put in the plea of non est factum, but did not support the same by an affidavit.

The plaintiff's counsel Messrs. Hayden & Clark insist that the proof offered to prove the bond was competent evidence. But they insist that admitting the proof was not competent evidence, yet the bond was proved without this evidence, and if so, then it could not be error to receive the proof, though it were incompetent.

By our statute no proof of the execution of an instrument declared upon is necessary, unless denied by plea supported by affidavit.

The act of the General Assembly (see revised code 627) says when any declaration or pleading or notice of set off, shall be founded on any instrument in writing purporting to be executed by the other party, whether un-

der seal or not, profert thereof shall be made, oyer thereof given if demanded, and the same shall be received in evidence unless the party charged to have executed the same, shall deny the execution thereof by a plea supported by his affidavit, accompanying the plea &c.

In this case there was no affidavit; of consequence the bond was entitled to be read to the jury without any further proof: the fact that other proof was given when none was required, though that proof was not legal, cannot in any way injure the defendants.

But it is insisted by the defendants' counsel that the provisions of the above act do not apply to executors and administrators; because the executor cannot in general know whether his testator did or did not execute the instrument sued on and to require him to swear, would be unreasonable. They farther insist that the very words of the act shew an executor &c. was not intended to be embraced. The argument is, that the act says the paper shall be received in evidence unless the party charged to have executed the same shall deny the same by oath. Now here the testator is the party charged to have executed the bond; as he is dead, the law cannot mean that he shall deny under oath, as he cannot do it, it follows the executor is not bound to make the oath, for he is not the party charged to have made the bond.

Our opinion of this Statute is this, that no one shall be bound to prove the note or bond sued on till the party who is defending shall swear he knows or believes the name is a forgery. This Statute is a useful Statute and has been found so in practice. If we give this Statute a strict construction, according to the letter, it would in all cases require the party who is charged to have made the instrument to make the affidavit. Now if he is dead and therefore cannot make the affidavit, then the paper must go in evidence, for the words are, that unless the party charged to have executed the instrument, shall make the affidavit, the paper shall go in evidence. We cannot think this is what the legislature meant. This would prevent the executor from making the affidavit; though he might be willing to do so.

Our opinion is that if the party charged to have made the instrument is a party to the pleading he shall make the affidavit, and if he is not a party, then the executor &c. may do it. Two decisions of this court heretofore made are in accordance with this opinion. We are therefore of opinion there is no error on this point.

The second point made and argued is, that the court

*Margin notes:*

MAY TERM, 1835.

Foster & Foster v. Nowlin.

And if illegal evidence thereof be given (where none was required) it will not make error.

The statute applies to executors and administrators sued on notes of their testators or intestates.

Foster & Foster
v.
Nowlin.

S. sold slaves to F.—after the death of S. the slaves were taken by F.——thereupon the creditors of S. sued F. as executor de son tort. F. proved that after the sale & whilst the slaves were in possession of S. he declared they were not his, but belonged to F. Held, that the pltʼf. might prove that S. also said at another time whilst the slaves were in his possession, that they were his slaves.

erred in admitting the declaration made to Warren, a witness in relation to the ownership of the slaves in question.

The defendants offered Warren to prove that while Simmons had the possession and use of the property, he declared the same was not his but belonged to the defendants, the plaintiff objected to the introduction of this evidence, but the same was admitted. The plaintiff then offered to prove by the same witness that he heard Simmons at another time and in another conversation declare the property was his, this evidence was objected to by the defendants' counsel but was admitted by the court.

We are of opinion that this testimony was correctly admitted, not as hearsay testimony, but being made while the property was in Simmons' possession is good evidence to shew the nature of that possession. On this there is no diversity of opinion.

I am also of opinion that it is legal as rebutting evidence. It seems to me that the evidence of Simmons' declaration that the property was not his was good evidence as going to shew the nature of the possession he had; the fact he affirmed was, that the property was not his, but was the property of the defendants. The enquiry to be made by the jury was, whether the fact was true as stated by him: if at a subsequent time he stated the property *was his* and not Foster's, then the credit of his former assertion is impeached. In this point of view, I have no doubt the testimony was properly received. This point is adjudged for the appellee.

3rd. The third point is, that one Thomas Simmons who gave evidence, should have been rejected as a witness.

The brother of S. and a distributee, not a competent witness for plff.

The record shews that Thomas Simmons was the brother of C. Simmons deceased: that C. Simmons died intestate and without issue. The defendants objected to him as a witness for the plaintiff on the ground of interest; and insist that a distributee cannot give evidence when that evidence would have the effect to enlarge the distributive share, nor where the testimony would have the effect to exempt the distributive fund from a payment or burden. To prove this, many authorities have been cited. See 2 Bac. 584-587 2 Starkie 775-6 770-774. 1 Starkie 88 in notes. 1 Mo. R. 214-15. 2 Bibb R. 427-8. 16 J. R. 93. Many others were cited to prove the same point.

We are well satisfied that Simmons the witness ought not to be allowed to be a witness; his situation was such, as to hold out to him a temptation to exonerate the estate of Simmons by fixing the liability on the Fosters: because if he could make out this property belonged to the

estate of C. C. Simmons, then the fund for distribution would be so much increased. If this property could be made a fund to extinguish the deceased man's debts, then the remaining fund would be relieved to that amount.

This point is ruled for the appellants.

4th. The fourth point is that the deposition of Thomas M. Patrick ought to have been excluded.

The testimony of Patrick appears to have been taken in Tennessee, a distance of 472 miles from the place of the residence of the defendants.

There is proof on the record to shew that the defendants had the notice served on them in time, allowing one day for every 25 miles, and 3 days in addition, calculating from the residence of the defendants.

The law is, that, there shall be allowed one day for every 25 miles, from the place of the service of the notice, the proof is, that the 472 was computed from the residence of the defendants, but it does not appear where that residence was. It was also objected that the record does not shew that at the time of the trial the witness lived more than 60 miles from the place of trial. We are not prepared to say the testimoney on the record makes out this fact. But it is insisted by the plaintiff's counsel that all this proof may have been made to the court and must now be considered as having been made, otherwise the court would not have let the deposition be read; and that what the court did is to be taken to be right till the contrary appears: this is the rule, he who wishes to reverse any thing done by the court below, must shew it to be wrong. In this case there might have been more testimony and enough to meet every demand now made by the defendant: but if the truth were not so he should have made his bill of exceptions so explicit that that presumption could not arise against him. But the counsel for the Fosters' argued that the bill of exceptions is so explicit, that it excludes all presumption that any other testimony was given to the court, other than that which is on the record.

The bill of exceptions details certain testimony and without saying this was all the testimony given on the point, proceeds thus: Whereupon the court held the deposition might be read.

The argument is that *whereupon* means on this evidence and none else the court decided &c.

Whereupon is a word relating to time and is called an adverb of time. The meaning of it in the bill of exceptions is that when the time arrived that the testimony was

MAY TERM,
1835.

Foster & Foster
v.
Nowlin.

A bill of exceptions details certain evidence, and then says, "*whereupon* the court decided" &c. Held, that this does not shew that all the evidence given in regard to the matter was preserved in the bill of exceptions.

MAY TERM,
1835.

Foster & Foster
v.
Nowlin.

closed, then the court decided so or so. No meaning which can be given to this word will or can make it a word of numbers or quantity. We are of opinion this point should be ruled for the appellee.

5th. The fifth point made was not argued nor can we perceive any thing in it.

6th. The sixth point was decided by this court in the case of Fosters v. Wallace. We see no reason to depart from that decision.

7th. The seventh point is, in our opinion not to be distinguished in principle from the 6th point. See the case of Foster v. Wallace 2 vol. Missouri R. 231.

In that case the validity of this same deed from Simmons to Fosters was brought in question; the question was whether it was fraudulently made to defeat creditors In order to do this the plaintiff Wallace gave in evidence among other things to shew Simmons' indebtedness, certain notes made by Simmons to sundry persons; the notes were not produced but we held the notes need not be produced to prove the indebtedness. That it was enough to prove the debt. In the case before us certain records of judgments had against Simmons at and before the time of making the bill of sale were offered in evidence; the defendants objected that records could only be given in evidence between parties and privies, and Nowlin not being privy nor a party to these judgments, they cannot be read to shew that at the time the bill of sale was made Simmons was largely indebted: this is the very best evidence that could be offered to that end.

*Plff. may give in evidence records of judgm'ts against S. to shew his indebtedness at the time of the sale of the slaves, although not between parties or privies.*

If this evidence is inadmissible to the end proposed, the consequence would be that all testimony to that end would be inadmissible.

This point is ruled for the appellee.

*A person may be charged as executor de son tort, although there be a rightful executor or administrator.*

8th. The eighth point made is that the court erred in refusing the fourth instruction asked by the defendant. That instruction asked was: that under the statute laws of Missouri no person can be charged as executor *de son tort* where there is a rightful executor or administrator.

The first argument assumed to sustain this point is, that at common law a wrongful executor is bound to administer the effects in the same manner a rightful executor is bound to do, except that he cannot retain for a debt due to himself. To prove this Mr. Leonard cites 2 Bacon's abridgments—Title Ex'r. *de son tort* 4th East's R. 441.

The second argument is that under the statutes of Missouri it is impossible to do so.

As to the first proposition the authorities support the point, and it is yielded to the appellants.

As to the second proposition, that it is impossible under our statute law for the executor de son tort to administer, as a rightful executor is bound to do, we think it is laid down a little too large. We cannot say it would be impossible, but we yield that it might be, and would be inconvenient and troublesome. If it should however be conceded that an executor *de son tort* cannot administer under our Statutes, we are not prepared for that reason to say the common law is so far repealed that there can be no executor of his own wrong. We think the conclusion to be drawn from this circumstance should be, not that the common law as regards the executor de son tort is repealed, but that it still stands, and that such executor is still responsible, as at common law: and that the rightful executor is not bound by the common law, but must go by the statute.

The question has been asked by the counsel if this view is to prevail, what is to hinder any creditor who wishes to get his whole debt free from the apportionment required by the statute, from procuring some friend to intermeddle, then sue him as executor *de son tort* and so get his whole debt? The answer which first occurs to us is, that if this were proved to be the case, courts of chancery would interfere and compel the creditor to submit to an apportionment; would if necessary enjoin such proceedings; and even in cases where there is no confederacy would, where assets ought to be apportioned, compell an apportionment.

But this would only be done with regard to assets which the rightful executor might claim as the representative of the deceased.

In this case if the creditors cannot recover in this way there is no remedy at law, the bill of sale though fraudulent as to creditors is good between the parties and their heirs, executors &c. So that these effects never could be assets in the hands of the rightful executor. It is true, the creditors of Simmons might in chancery subject this property in the hands of the Fosters to the payment of their demands. But whether the property or value of it would be subject to apportionment among other creditors, who might not chose to run the risk of a suit we will not now decide. There is no injury done to other creditors in this case: this fund in the legal course of administration never would be assets to pay their debts. And to decide this point for the defendants would be to decide

MAY TERM
1835.

Foster & Foster
v.
Nowlin.

that at law the creditors in this case would have no remedy. The consequence would be to drive him to chancery, and then he would be subject to more disadvantages than at law, if he could only prove his case by one witness, this would be good at law. But he must fail in chancery if the defendant will deny the fraud; there he would, though he had one good witness, lose his case. This view of the question satisfies us that the law on this point is with the appellees.

9th. The ninth point is that the court erred in refusing to give the first and third instruction asked.

S. lived in Tenn. and there died, possessed of personal property in that state. After the death of S. the defendants took the property and brought it to Mo. Held, that defendants may be charged as executors de son tort in this state.

These instructions in substance are, that where a person lives in another state and dies there, possessed of property there; and after such death a person in such foreign state takes it and brings it to Missouri, he cannot by the laws of Missouri be charged as executor *de son tort*. The first proposition assumed by the counsel is that: where for the want of jurisdiction there cannot be a rightful executor or administrator there cannot be a wrongful executor. This proposition being assumed then it is argued that the fact, that Simmons died in Tennessee and that his porperty was there when he died, and then brought to Missouri, the property so brought does not confer on the courts of this State testamentary jurisdiction. On this point we are not aware of any adjudication. It may be that by the grant of letters in Tennessee the property vested in the administrator there. But that grant could only vest in him the property in that State; for be yond the limits of the state they had no power to make any grant—nor can our courts by a grant of letters here, vest any right in the administrator beyond the limits of the state, our laws profess to go no farther. On this point we cannot say the circuit court was wrong, and until we discover that, we will not reverse its judgment.

This point is ruled for the appellee.

And defendants are liable according to the laws of Mo.—and the laws of Ten. need not be proved.

10th. The tenth point is that the circuit court erred in deciding that the defendants were liable in this state as executors *de son tort* according to our laws should have decided that liability, but according to the laws of Tennessee and what that liability is, should have been shewn by the plaintiff.

It is true the defendants did an act in Tennessee, which if done in this state would make them liable, as executors of their own wrong here. But they repeated the conversion or rather continued the taking in this state. So that here the intermeddling was as complete as it was in Tennessee, and for this they should be holden liable. Why

the necessity of proving the laws of Tennessre when the laws of Missouri will be sufficient for the *tort* committed here. It is for the wrong committed here the plaintiff sues. We think there is no error on this point.

11th. The eleventh point is, that the verdict does not sufficiently find the issues. The verdict as has been said before is in general terms. It becomes unnecessary to investigate this point, as the judgment must be reversed on the 3rd point.

We are however inclined to the opinion that the jury should have found what property came to the hands of the executors, and the value, and to the plea of plene administravit. The verdict should have found how much came to the hands of the defendants, and how much they had lawfully administered and how much remained, the value &c.

The judgment of the circuit [court] is reversed, the cause is remanded for a new trial.

*Verdict—we the jury find the issues for the plff. —not sufficient under the pleadings in this case —what it should find.*