THOMAS J. DOCKERY et al., Respondents, v. PERRY E. SPARKS, Administrator, Appellant.

Kansas City Court of Appeals, May 19, 1913.

1. ADMINISTRATION: Administrator de Son Tort. There is no such thing in Missouri as an administrator *de son tort.*

2. ———: Credit for Debts Paid: Appointment of Administrator, Relation Back. Where, after the death of a person and before issuance of letters of administration upon his estate, a large sum of money belonging to said estate was taken charge of

by another and expended in the payment of alleged debts of deceased, and afterwards letters were duly granted to person, his subsequent appointment as administrator did not relate back to the time he first took charge of the assets, nor give validity to his acts prior to his appointment and qualification.

3. ————: Demands: Must be Allowed. Under Sec. 230, R. S. Mo. 1909, an administrator is not entitled to credit in his settlement for any debt paid by him which had not been allowed by the court according to law.

4. ————: Wills. On rehearing. *Held* by TRIMBLE, J., ELLI-SON, P. J. concurring in a separate opinion, that the above is the correct view of the statute in all cases, except where there is a will in which the executor is directed to pay all debts without having them allowed. Such was the case in *Judson v. Bennett,* 233 *Mo.* 607, and the general remarks there made touching the executor's right to credit for sums paid out for debts not allowed apply only to the peculiar facts of that case, and do not abrogate the rule announced in the original opinion.

*Held,* by JOHNSON, J., dissenting, that the case of Judson v. Bennett, applies to all cases, and being the latest expression of the Supreme Court's views on the point in question, it must be followed. *Held, further,* that, as the majority opinion on rehearing is in conflict with the Judson case, the cause should be and is certified to the Supreme Court.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

AFFIRMED. CERTIFIED TO THE SUPREME COURT.

*Weatherby & Frank* and *Smoot & Cooley* for appellant.

*Higbee & Mills* for respondents.

JOHNSON, J.—The respondents are the heirs of Matthew Sparks who died testate in Adair county March 7, 1906. The appellant was the brother of the deceased and on April 20, 1907, became administrator of the estate under letters of administration with will annexed issued by the probate court of Adair county. It appears that in the interim between the death of

the testator and the issuance of the letters appellant administered the personal estate. He collected and preserved the property and paid debts of the deceased aggregating $2327.74. It is admitted these debts were valid and would have been allowed by the probate court as demands against the estate had they been presented and proved in the time and manner prescribed by law. They were not so presented and proved but in his annual and final settlements appellant included these disbursements as credits. Respondents filed objections to the final settlement and at the hearing of the objections on appeal the circuit court sustained them, holding that appellant was not entitled to credit for debts of the deceased which he had paid before his appointment and qualification as administrator for the reason that none of such debts had been allowed as demands against the estate as provided by law. Judgment was rendered accordingly and the administrator appealed. Counsel for appellant argue, first, "that these debts were paid by him out of the assets of the estate during the year 1906 and before his appointment as administrator; that his subsequent appointment and qualification as administrator of said estate related back and covered the former acts thereby legalizing all he had done in the interest of the estate, thereby rendering the exhibition and allowance of said claims unnecessary; and, second, counsel insist that since the purpose of the statutes relating to the allowance of demands against estates of deceased persons is to prevent the payment of unjust demands, the admission of respondents that the claims in question were legal and just and that appellant paid them out of the estate of the deceased deprives respondents of the right to say that appellant is not entitled to credit for them in his final settlement.

At common law an administrator *de son tort* (which meant a person who assumed to act as the administrator of an estate without lawful appointment

and authority) might be held to respond to the demand of a creditor or distributee of the estate as though he were its lawful administrator and in an action of such character, might defend by showing that he had paid debts of the deceased to the amount of the goods received. [Weeks v. Gibbs, 9 Mass. 74.] "It seems to be well settled that an executor in his own wrong may always plead that he has fully administered." [Olmsted v. Clark, 30 Conn. 108.] And further it was a well settled rule at common law that "when an executor *de son tort* takes out letters of administration, his acts are legalized, and are to be viewed in the same light as if he had been rightful executor, when the goods came into his hands." [Magner v. Ryan, 19 Mo. 196.] In this case as well as in the case of Foster v. Nowlin, 4 Mo. 18, the Supreme Court held in effect that the common law relating to executors or administrators *de son tort* was still a part of our jurisprudence. But later this view was challenged by this court in Rozelle v. Harmon, 29. Mo. App. 569, in an able opinion written by PHILIPS, P. J., and the conclusion was reached that our statutory system of administration which had been enlarged since the earlier cases to which we have referred had made obsolete the common law rules and was exclusive of them. This case was certified to the Supreme Court and the conclusion of Judge PHILIPS was sustained by that court (103. Mo. 339). In the opinion which was written by MACFARLANE, J., it is said: "The system provided by the laws of our State for the settlement of the estates of deceased persons was evidently intended to be exclusive of all others . . . these provisions of the law are wholly inconsistent with the idea of executors *de son tort* at common law. The administration laws of the State do not recognize the right to wrongfully administer."

The appellant cannot be regarded as an administrator *de son tort* when he paid the debts in question.

He was a mere intermeddler. But it is argued that his subsequent appointment and qualification related back to the death of the testator and validated all his acts with relation to the estate performed during the period of his intermeddling. We are willing to concede, *arguendo*, that this is true with one most important exception. His subsequent appointment could not and did not have the effect of vitalizing the things he did which would have been beyond the scope of the authority of a lawful administrator. The doctrine of relation has never been carried to such an illogical extent. As is well said in a footnote in 3 Redfield on the Law of Wills (p. 26): "This relation back of the appointment of one as executor or administrator, can only afford a shield as to those acts which come properly within the scope of the authority of a rightful executor or administrator." [Citing Bellinger v. Ford, 21 Barb. 311.]

The final question, therefore, is this: Would appellant, had he taken out letters before the payment of the debts, have been entitled to credit for these debts in his settlements? Prior to 1889 the statute relating to such settlements (Sec. 230, Rev. Stat. 1879) provided: "Upon every settlement, the executor or administrator shall show that every claim for which disbursements have been made has been allowed by the court according to law, *or shall produce such proof of the demand as would enable the claimant to recover in a suit at law.*"

This law protected an administrator in his payment of a just demand that had not been established in the manner provided in other sections of the statutes. And if it were still the law we would hold that the admission of respondents precluded them from attacking the credit and that the probate court did right in allowing it to stand on proof of the validity of the debts. But, unfortunately for the position of appellant, this statute was amended in the Revision of 1889

(sec. 223) by striking out the part we have italicized and since that date an executor or administrator may claim credit in his settlements only for the debts paid by him which have "been allowed by the court according to law."

Speaking of this change the Supreme Court in Langston v. Canterbury, 173 Mo. 1. c. 129, approve the holding of Judge BARCLAY in Springfield Grocery Co. v. Walton, 95 Mo. App. 526, that "the alteration of the law in question was intended to make the allowance by the court an essential prerequisite to the payment of all ordinary demands against an estate."

Appellant, therefore, would not have been entitled to the credit had he paid these unallowed debts while he was the lawful administrator of the estate. The statutes provide a plan for a practical adjudication of demands of creditors against the estates of deceased persons and the Legislature in the amendment of 1889 doubtless intended to make this plan exclusive and to put a stop to the somewhat general practice of executors and administrators paying demands at their own discretion. If a regularly appointed administrator could not lawfully have done what appellant did, no reason in law or morals could be assigned in justification of appellant, who was a mere intermeddler. To hold otherwise would be violative of the rule that the doctrine of relation applies only to those acts that a lawful administrator would have had authority to perform and not to those in excess of such authority.

There is no question of estoppel in this case. The respondents, as heirs, are entitled to stand on their legal right to have the estate administered according to law and in the absence of any proof that they consented to the intermeddling of appellant we cannot perceive any ground for holding them estopped by the mere fact that the debts voluntarily paid by appellant were, in fact, just claims against the estate. If this position of appellant were sound, then a lawful

administrator could pay unallowed claims and defeat the prime purpose of the amendment of 1889 by showing that the claims were just and, consequently, that the distributees, having no ground for contesting them, should be held to have acquiesced in their payment.

The case of Gupton v. Carr, 147 Mo. App. 105, much relied on by appellant, involved an entirely different state of facts from that before us and is not in point. The judgment is for the right party and is affirmed. All concur.

## ON REHEARING.

TRIMBLE, J.—After the announcement of the original opinion herein by our learned associate, Judge JOHNSON, appellant filed motion for a rehearing, and cited therein the recent decision of the Supreme Court in Judson v. Bennett, 233 Mo. 607, and a rehearing was granted on the ground that Judge JOHNSON's opinion seem to be in conflict with the above case. On rehearing, our learned associate came to the conclusion that his opinion was in conflict with the Judson case and that, as it is the latest expression of the Supreme Court's views on the point in question, it should be followed and the cause before us reversed and remanded instead of affirmed.

I am unable to agree with our associate in the conclusion reached by him on rehearing. To my mind the original opinion is the correct view. The point wherein the original opinion seems to differ with the Judson case is the right of an administrator to receive credit in his settlements for sums he has paid out as debts owed by the estate but which were not allowed by the probate court according to law.

As I understand the record in the case before us, respondents do not admit that the several credits ob-

jected to were the debts of deceased. What they did admit was that W. L. Young and Owen Meredith would both testify that said credits were debts of deceased. But they objected to this testimony and their objection was by the court overruled. The ground of their objection was that the demands had never been proved or formally allowed by the probate court.

But even if it is admitted that the items objected to were debts of the deceased, this would not authorize the court to give the administrator credit for them when they had not been established and allowed by the probate court within the time prescribed by and according to law. While the fact that the items objected to are bona fide debts of the deceased, and the objection to them is solely on the omission to have them allowed, may appeal strongly to the sympathy of the court in behalf of the administrator, yet judges have no right to go contrary to the express command of the statute no matter if obeying it does appear to result in hardship to a litigant.

As held by Judge JOHNSON in his original opinion, section 230, Revised Statutes of Missouri 1909, says: "Upon every settlement, the executor or administrator shall show that every claim for which disbursements have been made has been allowed by the court according to law." Prior to the Revision of 1889 (sec. 223) this section contained these additional words, "*or shall produce such proof of the demand as would enable the claimant to recover in a suit at law.*" [R. S. Mo. 1879, sec. 230.] This portion was, in said revision, stricken out. In Springfield Grocer Co. v. Walton, 95 Mo. App. 526, l. c. 533, Judge Barclay, speaking of the change in the statute, said: "The alteration of the law in question was intended to make the allowance by the court *an essential prerequisite* to the payment of all ordinary demands against an estate. . . . The credits claimed, therefore, could not properly be allowed to the administrator, where any interested

party excepts or objects thereto on final settlement.'' And our Supreme Court in Lanston v. Canterbury, 173 Mo. 122, l. c. 128, explicitly held to the same effect. In deciding this point the Supreme Court said: ''The amendment of that section by striking out the last clause and reducing it to what we now have, is a very emphatic expression of legislative intent that nothing less than the allowance of the claim by the court would avail the administrator.''

If the statute and the construction placed thereon by the Supreme Court in the Langston case are still binding on us, there is no authority in us, or in the trial court, to permit an administrator to take credit for a debt paid by him but which was not allowed, however much we may feel that in equity and good conscience he should be allowed such credit. The law was so framed in order to *protect dead men's estates*, and to make sure that before any claim is paid it will receive the careful unbiased sanction of a court's formal judgment. It is a law easily observed. There is nothing difficult for an administrator to do in obeying it. All he has to do is to say: ''Have your claim allowed and I will pay it, but not before.'' In fact, it is a help to him since it relieves him of the responsibility of deciding the justness and legality of debts.

The case of Judson v. Bennett, 233 Mo. 607, ought not, in my judgment, to be deemed an authority to the contrary. If the writer understands the facts correctly, the will in that case conveyed the property to the executors with specific directions to manage the estate *and pay all debts of the deceased without having them allowed by the probate court.* On page 623 of the Judson case the trial court, in its findings of fact, says that, ordinarily, executors would have no right to pay any indebtedness without the same having been first allowed, but that *''in this case the will directs them to do so,''* and ''contains provisions that are not found in any cases cited by the counsel or

found by the court. First, the provision for the payment of the debts without allowance by the probate court." [p. 624.] It was argued before the trial court in that case that this direction in the will, to pay debts without having them allowed, was a nullity as the "testator had no right to fix any mode for the payments of his debts except the mode provided by law," [p. 623.] But the trial court held that *such provision in the will was not a* nullity. And the Supreme Court *upheld that view.* And it was in passing on this question that the Supreme Court on page 646 uses the language which, at first blush, seems to hold contrary to the original opinion herein and the Langston and Springfield Grocer cases. But that language, though perhaps general in its terms, is applicable only to the peculiar facts of that case and to the subject then under discussion. This subject is disclosed in the opening lines of the paragraph containing that language. The Supreme Court say: "The contention of counsel for appellants is, the *law of the State,* applicable to probate matters, *and not the wills of deceased persons,* governs the settlement and distribution of their estates." And it is in passing on this question, i. e. the validity of such a provision in the will, that the court uses the language referred to.

The language of the Supreme Court on page 649 to the effect that the law imposes certain duties on executors which they cannot escape, among them, the collection and preservation of the assets and the payment of debts, was not used in answer to any argument on the question now before us. In fact, it was not said on this point at all, but on an entirely different one. The trial court had allowed respondents omissions twice, once as executors and again as trustees, and it was in passing on the propriety of this allowance that the Supreme Court used the language last above mentioned. On this point the Supreme Court *disapproved* the ruling of the trial judge while it *ap-*

*proved* its ruling on the other point. So that the language could not possibly apply to the latter.

In conclusion, I do not think the Judson case was dealing with the precise question we have here. The language used applies only to the facts of that case wherein the will *directed the debts to be paid without allowance*. While it appears general in its terms yet it was not intended to apply to administrator or executors where there was no such authority in the will. Hence it does not overrule the Langston case in 173 Mo. 122, but leaves it still in force, and, therefore, our duty is to follow the Langston case *and the statute*. Hence the judgment should be affirmed.

I do not think the language of the Supreme Court in 233 Mo. 647, in the Judson case, that "counsel for appellants have cited us to no authority supporting that proposition, nor have we been able to find any such" means that either the statute or the Langston case has been overlooked, but only that, owing to the peculiar and unusual authority, to pay debts without allowance, contained in the will, makes the statute and the Langston case inapplicable to the Judson case. For these reasons I vote to affirm the judgment. ELLISON, P. J., concurs in separate opinion. JOHNSON, J., dissents, and deeming the majority opinion on rehearing to be in conflict with the decision of the Supreme Court in the Judson case, supra, certifies this case to that tribunal for final determination.

ELLISON, P. J.—So far as heirs are concerned, the testator being under no obligation to them may direct in his will that his debts may be paid without allowance by the probate court. If the testator disposes of that part of his estate in that way, he has a right to do so, without consulting the wishes of his heirs, and they are only entitled to what remains. The question before the Supreme Court in Judson v. Bennett, 233 Mo. 607, is not the one involved here. In this

case there was no will and the estate was therefore to be settled by the administrator as directed by the statute; that is, to pay only such debts as have been allowed. While in that case there was a will which directed the debts to be paid without allowance. The contention of the heirs in that case, as disclosed in their instruction, quoted at page 645 of the report, was that the executors had no right ''under the will'' to pay claims against the estate until after they had been first allowed. And the court, at page 646, stated the question raised by them was, that the probate statute governed the executors, and not the will. It is to that question Judge Woodson's opinion is addressed. It, in all probability, did not occur to the court that its remarks would be regarded as applicable to cases of ordinary administration where there was no will, or, if one, where no direction was given by the testator. To a correct understanding of language the first requisite is to ascertain the subject to which it is addressed. I concur in the opinion of Judge Trimble.

JOHNSON, J.—I think the language of the Supreme Court in the Judson case is couched in such broad and comprehensive terms as to preclude the thought that the rule overturning the Langston case was intended to be restricted in its application to special cases such as that the court had under consideration.

Therefore, I cannot regard the majority opinion, in the present case, the reasoning and logic of which I approve, in any other light than as being in conflict with the latest decision of the Supreme Court on the subject, and it is for that reason that I certify the cause to the Supreme Court.