**Harriet SMITH, as Personal Representative of the Estate of Harry Pyle Boyd, deceased, Plaintiff/Appellant,**

v.

**T.C. TANG, M.D., Defendant/Respondent.**

**No. 69332.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Aug. 13, 1996.

Dennis M. Murphy, Murphy & Twitty, Columbia, for appellant.

John L. Oliver, Oliver, Oliver & Waltz, P.C., Cape Girardeau, for respondent.

CRANE, Chief Judge.

Plaintiff, personal representative of her father's estate, filed an action on June 2, 1995 against defendant physician seeking damages for medical malpractice for lost chance of survival as a result of defendant's treatment of plaintiff's father who died on October 8, 1991. The trial court granted defendant's motion for summary judgment on the ground that the action was barred by the two-year medical malpractice statute of limitations. For her sole point on appeal plaintiff contends that the trial court erred in granting summary judgment because her 1994 ap-

pointment as personal representative "related back" to her father's death, thus making her a "duly-appointed personal representative" on October 7, 1993 when she filed a petition in her individual capacity for lost chance of survival. We affirm on the ground that plaintiff's 1995 petition was barred by the statute of limitations.

The decedent, Harry Pyle Boyd, entered Salem Memorial Hospital on October 7, 1991 at 8:35 p.m. and died at 1:55 a.m. on October 8, 1991. On October 5, 1993 his daughter, Harriet Smith, filed a wrongful death action against T.C. Tang, M.D. and Salem Memorial District Hospital in the Circuit Court of Dent County.[1] On October 7, 1993 Harriet Smith filed an amended petition against T.C. Tang, M.D. and Salem Memorial District Hospital seeking damages under § 537.020 RSMo 1986, the survivorship statute, for medical malpractice resulting in a lost chance of survival. Smith named herself individually in the caption. In the petition she alleged that she filed "both in her individual capacity as the surviving daughter of Harry Pyle Boyd, and in her capacity as the *prospective* personal representative of the estate of the Decedent, Harry Pyle Boyd." (emphasis added). The defendant hospital filed a motion to dismiss which was sustained by stipulation. On November 5, 1993 defendant Tang moved to dismiss the petition based on Smith's lack of standing in that Smith was not a personal representative. The trial court denied the motion and defendant Tang subsequently petitioned for a writ of prohibition.

On April 27, 1995, the Southern District issued a permanent order of prohibition on the ground that Smith had filed a lost chance of survival action under the survivorship statute which was required to be brought by the personal representative, *Wollen v. DePaul Health Ctr.*, 828 S.W.2d 681, 686 (Mo. banc 1992), or a plaintiff ad litem, § 537.021 RSMo (Cum.Supp.1993), and that she had "no standing to bring this action in her individual capacity as the decedent's daughter." *State ex rel. Tang v. Steelman*, 897 S.W.2d 202, 203 (Mo.App.1995). It directed the trial court

"to proceed no further upon the First Amended Petition, except to enter an order dismissing same." *Id.* On May 22, 1995 the trial court entered its order dismissing the first amended petition.

On January 25, 1994 Smith was appointed personal representative of her father's estate. By this time the two-year medical malpractice statute of limitations had run.

On June 2, 1995 Smith, in her capacity as personal representative, filed a petition for damages for lost chance of survival under the survivorship statute naming Tang as the sole defendant. The cause was transferred on a change of venue motion to the Circuit Court of Washington County in this district. Tang filed a motion for summary judgment on the ground that the action was barred by the two-year medical malpractice statute of limitations, § 516.105 RSMo 1994. The trial court sustained defendant's motion and dismissed plaintiff's petition with prejudice because "Harriet Smith as the Personal Representative of the Estate of Harry Pyle Boyd, Deceased, did not, prior to the expiration of the period of time prescribed by Section 516.105, file a lawsuit."

■ For her sole point relied on, Smith asserts that the October 7, 1993 lost chance of survival action was timely filed within the two-year medical malpractice statute of limitations and that her subsequent appointment as personal representative "related back" to include that filing, so that she had in fact filed as a "duly-appointed personal representative" on October 7, 1993. We disagree.

■ Smith bases her claim of relation back on a common law doctrine under which the subsequent appointment of a person as administrator of an estate relates back to the death of the testator and validates all acts of the administrator which would have been lawful and authorized if the administrator had been earlier appointed. This doctrine was described in *dicta* in *Dockery v. Sparks*, 170 Mo.App. 651, 157 S.W. 365 (K.C.App. 1913). It relates to the administrator's liability for paying claims filed against the estate

---

1. This petition was not included in the legal file and Smith makes no claim or argument on appeal with respect to this petition.

prior to appointment. It does not give an administrator retroactive standing in a previously filed and dismissed court action so as to avoid the statute of limitations. These matters are controlled by statutes and rules of procedure. A personal or real action filed after the limitations period may be saved by application of the savings statute, § 516.230 RSMo 1994. In addition an amendment filed after the limitations period may relate back to the original pleading pursuant to Rule 55.33(c).

■ In the argument portion of her brief, Smith asserts that the savings statute applies to her 1995 filing. Issues not encompassed by the point relied on and raised only in the argument portion of the brief are not preserved for review. *Chancellor Dev. Co. v. Brand,* 896 S.W.2d 672, 678 (Mo.App.1995). Nevertheless, in our discretion, we will review this claim on its merits.

■ Actions for medical malpractice must be brought within two years after the plaintiff knows or should have known of the alleged malpractice. § 516.105 RSMo 1994. The savings statute, § 516.230 RSMo 1994, provides:

> If any action shall have been commenced within the times respectively prescribed in sections 516.010 to 516.370, and the plaintiff therein suffer a nonsuit, . . . *such plaintiff* may commence a new action from time to time, within one year after such nonsuit suffered. . . .

(emphasis added).

■ Smith filed a survivorship action as an individual in 1993 and a second action as personal representative in 1995. Both actions sought recovery for her father's lost chance of survival. A lost chance of survival action is a personal injury action which belongs solely to the injured party, in this case Smith's father, Harry Pyle Boyd. *Sauter v. Schnuck Markets, Inc.,* 803 S.W.2d 54, 55 (Mo.App.1990). At common law tort actions did not survive the death of the injured party. *Id.* By statute, such actions survive to the personal representative of the injured party. *Id.;* § 537.020 RSMo 1994. In contrast a wrongful death action belongs to the decedent's survivors, not the decedent, and

does not vest in the decedent's estate. *Sullivan v. Carlisle,* 851 S.W.2d 510, 513–15 (Mo. banc 1993); § 537.080 RSMo 1994.

Smith, as personal representative, filed the survivorship action in 1995, more than three and one-half years after the alleged malpractice occurred. Although this action was filed within one year after her individual action was dismissed, the savings statute does not apply to her 1995 action because Smith as an individual and Smith as a personal representative were legally different plaintiffs. *Tang,* 897 S.W.2d at 203 (citing *Wollen,* 828 S.W.2d at 686 and *State ex rel. Jewish Hosp. of St. Louis v. Buder,* 540 S.W.2d 100, 105 (Mo. App.1976)). The right to commence a new action within one year of suffering a nonsuit is given only to the plaintiff in the original action. *Meddis v. Wilson,* 175 Mo. 126, 74 S.W. 984, 986 (Mo.1903). A new plaintiff who was not the plaintiff in the nonsuited action "manifestly is not protected by the provisions of this section of the [savings] statute." *Id.* An exception arises only where the second plaintiff sues in the same right as the original plaintiff, such as a successor trustee. *Id.* In her capacity as personal representative of her father's estate, Smith had not filed a suit prior to 1995, was not a party to the 1993 suit, and had not suffered a nonsuit prior to her 1995 filing. As personal representative of an estate, she is not suing in the same right as an individual survivor of the decedent. Therefore, as personal representative of an estate she is not entitled to the protection of § 516.230 RSMo 1994.

■ Further, even if the 1995 action is considered to be an amendment, there is no relation back under Rule 55.33(c). An amendment will relate back to the original petition so as to save the action from the statute of limitations only when the original plaintiff had the legal right to sue and stated a cause of action at the time the suit was filed. *Buder,* 540 S.W.2d at 107; *Harting v. City of Black Jack,* 768 S.W.2d 633, 636 (Mo.App.1989); *Don Roth Dev. Co., Inc. v. Mo. Hwy and Transp. Comm'n,* 668 S.W.2d 177, 179 (Mo.App.1984). Thus an action filed by an adult child as administrator can not relate back to an action filed by the same adult child as an individual. *Buder,* 540

S.W.2d at 107. Although a different statute was at issue, the rationale in *Buder* is directly on point.

> An adult child has no right or standing, under the circumstances here, to maintain suit under the wording of the statute, and an amendment substituting an authorized and designated party cannot therefore relate back to the original petition. The breath of life cannot, by judicial hands, be instilled into a petition devoid of life.

*Id.* In recognizing a cause of action for lost chance of survival, *Wollen* held that only a personal representative could bring that action and that a survivorship action brought by an individual does not state a cause of action. *Wollen,* 828 S.W.2d at 686; [2] *see also Tang,* 897 S.W.2d at 203. Smith did not have standing to file the October 7, 1993 survivorship action in her personal capacity and did not state a cause of action in that pleading. Accordingly, there could be no relation back under Rule 55.33(c) of the survivorship action she filed as personal representative in 1995.

The judgment of the trial court is affirmed. Defendant's motions to strike portions of the legal file, to strike plaintiff's brief, and to dismiss the appeal are denied. Plaintiff's motion to supplement the legal file is granted.

AHRENS, J., concurs.

CHARLES B. BLACKMAR, Senior Judge, dissents in separate dissenting opinion.

CHARLES B. BLACKMAR, Senior Judge, dissenting.

I am of the opinion that the circuit court erred in depriving the plaintiff personal representative of the opportunity to prosecute a claim for lost chance of survival. I would reverse and remand for further consistent proceedings. Although I have no quarrel with the facts as stated in the court's opinion, clarity requires a restatement to better demonstrate my analysis.

The deceased, Harry Pyle Boyd, was taken to Salem Memorial Hospital on October 7, 1991 and died in the early morning hours of October 8. On October 5, 1993 his daughter, Harriet Smith, filed an action for wrongful death under § 537.080 RSMo (Cum.Supp. 1991) in the Circuit Court of Dent County. She, as his daughter, was perfectly entitled to file this suit in her own name, without joining any other party. *Fitzpatrick v. Hannibal Regional Hosp.,* 922 S.W.2d 840 (Mo. App.1996). Her filing was within both the two-year statute of limitations for medical malpractice actions (§ 516.105 RSMo 1986) and the three year statute governing wrongful death actions (§ 537.080 RSMo (Cum. Supp.1991)). The defendant, therefore, is quite wrong in arguing that the initial proceeding was "void," and that "no valid action was ever instituted against [the defendant]."

Under the holdings of *Koerper & Co. v. Unitel Int'l, Inc.,* 739 S.W.2d 705 (Mo. banc 1987) and *Wells v. Stinson, Mag & Fizzell,* 739 S.W.2d 706 (Mo. banc 1987) an amended petition declaring on the "conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading" relates back to the filing of the original petition in determining the application of the statute of limitations, even though it alleges additional facts or "changes the cause of action." *See* Rule 55.33(c). By reason of this filing the defendant had notice that his medical procedures were being called into question, and, contrary to the defendant's argument, he had no "vested right" to a dismissal under the statute of limitations until the suit against him, and any refiling permitted by § 516.230 RSMo had been finally disposed of. Such cases as *Briggs v. Cohen,* 603 S.W.2d 20 (Mo.App.1980) are distinguishable because here the plaintiff, as a surviving daughter, had the legal capacity to file the action she first filed.

Just two days later the plaintiff filed a first amended petition in which she sought to recover not for wrongful death but rather for lost chance of survival under the doctrine of *Wollen v. DePaul Health Ctr.,* 828 S.W.2d 681 (Mo. banc 1992). If wrongful death is relied upon the required proof of causation is stricter than that required in a lost chance of survival case. Under *Wollen,* however, the

---

**2.** In 1993 the legislature provided for appointment of a plaintiff ad litem to also file a survivorship action. However, Smith did not seek such appointment.

plaintiff daughter lacked standing to sue because a claim for lost chance of survival is not a wrongful death action but rather an action belonging to the personal representative of the deceased for the benefit of the legal successors. The then recently amended § 537.021 RSMo, a procedural statute applicable to this case, provided the options of seeking appointment of a personal representative or of a plaintiff ad litem to prosecute the claim. By the holding of *Wollen* there would be no obstacle to the substitution of a personal representative or plaintiff ad litem for the individual plaintiff, and this is so even though an initial action would be barred by the two-year statute of limitations for malpractice actions. Thus the discussion in the briefs as to whether the letters "relate back" is not pertinent.

The initial plaintiff could have simplified matters greatly for everyone if she had simply sought to have herself appointed plaintiff ad litem, which could have been accomplished by an *ex parte* order. She chose, however, to apply for letters of administration as personal representative, and did not complete the application process prior to the second anniversary of her father's death. In her first amended petition she described herself as "prospective personal representative." Even after she obtained her letters she made no application to file a second amended petition, but rather resisted a motion to dismiss, after which the defendant sought and obtained an absolute writ of prohibition from the Southern District of the Missouri Court of Appeals. *State ex rel. Tang v. Steelman*, 897 S.W.2d 202 (Mo.App.1995).

The Southern District noted that Ms. Smith had no authority to maintain a diminished opportunity for survival claim in her own name. It observed that "although ... Plaintiff apparently was named personal representative of the decedent's estate, no amended petition reciting this fact was sought or filed." It therefore prohibited the respondent judge from taking any action on the first amended petition except to dismiss it. The court expressly disclaimed any purpose of holding that the petition could not be amended to substitute Smith as personal representative, pointing out that *Wollen* indicated the possibility of such amendment, and stating that "whether an amended petition should be allowed here is not an issue before us...."

After the writ was made absolute the defendant filed a motion to dismiss. The plaintiff sought leave to file a Second Amended Petition, suing as personal representative, which she then was, rather than in her own name. The trial court sustained the motion to dismiss and did not rule on the request for leave to amend. The dismissal was necessarily without prejudice because the court did not specify otherwise. Rule 67.03. The plaintiff did not appeal.

The plaintiff, rather, filed another action, this time in her capacity as personal representative. The case was taken to Washington County on change of venue, and thus came within the scope of our appellate jurisdiction. The Circuit Court of Washington County sustained the defendant's motion for summary judgment, finding that there were no genuine issues of fact and that the action was barred by the two-year statute of limitations for malpractice actions, § 516.105 RSMo. This appeal followed.

Under *Wollen*, the proposed amended petition tendered to the Circuit Court of Dent County was appropriate. The court would not have violated any of the terms of the writ of prohibition if it had granted leave to file it. If a petition fails to state a claim, the trial court should ordinarily allow amendment rather than dismissing the petition. Rule 55.33(a). Thus the Dent County court appears to have committed a clear abuse of discretion in failing to allow the filing of the proposed Second Amended Petition.

The plaintiff, however, did not seek relief from the dismissal in Dent County, but rather elected to file a second action, relying on the "savings statute," § 516.230 RSMo. I do not believe that it is necessary to hold, as the principal opinion does, that the plaintiff is precluded from relying on that statute simply because her initial petition was filed in a different capacity. Section 516.230 recognizes that a plaintiff may sometimes be turned out of court because of procedural mistakes and seeks to provide a chance to make correction. *Wollen* clearly authorizes

amendments to change the capacity of the plaintiff. It would be consistent to allow refiling. The court's opinion correctly points out that "Smith as an individual and Smith as personal representative were legally different plaintiffs, ..." but it does not necessarily follow that the plaintiff may not rely on § 516.230. Pre–*Wollen* cases are no longer reliable as authority.

The plaintiff personal representative should not be barred because she chose to refile rather than appealing the dismissal in Dent County and challenging the effective denial of leave to amend. At the time she made her choice substantial authority supported the proposition that a dismissal without prejudice did not give rise to an appealable order, because the plaintiff could correct the situation by filing a new action. *See Fitzpatrick*, 922 S.W.2d 840.

The plaintiff made a reasonable choice under the state of the authorities. The holding of the principal opinion that "as personal representative, plaintiff has never suffered a nonsuit" is unduly technical, inconsistent with the purpose of § 516.230, and not required by any controlling authority. The plaintiff had sought to sue as personal representative in the dismissed suit, and so was effectively nonsuited in that capacity. This should be adequate to permit the refiling.

I consider the defendant's argument that the letters of administration are "void" because they do not recite on their face that the plaintiff's authority as personal representative is limited by the terms of § 537.021–1(1) to be utterly frivolous. There is no requirement that the letters recite the limitation of authority. The statutes effect the limitation. The application disclosed the purpose for which the letters were sought. The form of letters is determined by the issuing court.

The result I urge does not violate any substantial right of the defendant. He was properly notified of the claims against him within the two-year period of limitation. The delay in bringing the case to fruition is unfortunate, but, in my experience, not unusual for malpractice actions. If the action is dismissed on procedural grounds the defendant will have a windfall in being relieved of a claim timely filed without consideration of the merits.

I would not bar the plaintiff because she neglected the opportunity to seek appointment as plaintiff ad litem, inasmuch as *Wollen* clearly contemplates the substitution of a personal representative for a wrongful death plaintiff, even after the statute of limitations would have barred an initial action. *Wollen* may not have provided a clear roadmap. Hindsight might also suggest that the plaintiff, as soon as she obtained her letters, should have sought to file a second amended petition, declaring in her capacity as personal representative. I do not believe that the plaintiff is guilty of such delicts as to overcome the normal rule that cases should be decided on the merits rather than on procedural grounds whenever possible.

The cases cited in the principal opinion for the proposition that an appointment may not "relate back" so as to preclude the bar of the statute of limitations were decided before the expansion of the concept of relation back as enunciated in the *Koerper* and *Wells* cases cited above and before the recognition by *Wollen* of a kind of claim for relief not previously established in Missouri. The claims for wrongful death on account of malpractice and for diminished chance of survival depend on the same facts. By the logic of the principal opinion a plaintiff might file a wrongful death suit and then be precluded from amending if the two-year statute of limitations expired before the amendment was made. This is an undesirable situation not compelled by statutory language or by controlling precedent. The court should not relieve the defendant of a challenge to his treatment when timely notice was given.

I would reverse the judgment of dismissal and remand for further consistent proceedings. I hope that, however this case is eventually decided, this opinion will be helpful to future litigants in enabling them to avoid pitfalls.